**Affirmed in part, Reverse and Remand in part and Opinion Filed May 22, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00780-CV

**MICHAEL O. PICKENS, Appellant**

**V.**

**ELIZABETH CORDIA, PAMELA PICKENS, T. BOONE PICKENS JR., AND THOMAS B. PICKENS III, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-01890-F**

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Francis

Appellant Michael O. Pickens is the brother of appellees Elizabeth Cordia, Pamela Pickens, and Thomas B. Pickens III, and the son of appellee T. Boone Pickens Jr. Appellees sued Michael for invasion of privacy by public disclosure of private facts, defamation, statutory libel, and intentional infliction of emotional distress for remarks he published about them on a blog. In addition, Pamela brought a separate claim for harmful access by computer. Appellees sought damages and injunctive relief.

Michael moved to dismiss the lawsuit under chapter 27 of the Texas Civil Practice and Remedies Code, known as the Texas Citizens Participation Act (TCPA). The TCPA provides an expedited means for dismissing actions involving the exercise of certain constitutional rights, including free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011 (West Supp.

2013).  After a hearing, the trial court granted dismissal of the harmful access by computer claim but denied dismissal of the remaining claims.

In this interlocutory appeal, Michael challenges the partial denial of his motion, and Pamela cross-appeals the dismissal of her harmful access by computer claim.  For reasons set out below, we reverse the trial court's order dismissing Pamela's harmful access by computer claim and remand that claim for further proceedings.  We affirm the order in all other respects.

Michael is a recovering drug addict who, as an "interventionist," helps addicts "to get and stay clean."  He also writes a blog that he says has as its "primary theme" his own "history of, and then recovery from, substance addiction."  This blog, "5 days in Connecticut," is the center of the claims in the lawsuit.

The blog contains a number of posts.  Many generally relate to Alina Lodge, where Michael underwent inpatient treatment, include personal stories about Michael's time at Alina Lodge, or address matters he learned while at Alina Lodge.  Other posts, including a seven-page entry entitled "My Story," relate personal stories concerning Michael's upbringing, his family, his addiction, and his recovery.  "My Story" presented a critical picture of Michael's father and his home life.  Among other things, Michael's blog portrayed his father as a fear-inducing, hateful person who "instigate[d]" arguments with his children to get a "big win," used money to control people, and subjected his children to "child abuse."  As for his siblings, Michael said none of them had been "successful in life" and "[w]e have all struggled with tremendously difficult lives, each defined by its own variety of downstream wreckage, inherently the result of all child abuse."  After detailing his years of alcohol and drug abuse, he characterized the members of his "family of origin" as "all addicts."

Appellees sued Michael, alleging he had invaded their privacy and exposed them to ridicule, humiliation, and extreme embarrassment by posting false statements about them on his

blog. Pamela also alleged a claim for harmful access by computer under section 143.001 of the Texas Civil Practice and Remedies Code. Appellees later amended their petition to add a claim for intentional infliction of emotional distress in which they alleged Michael attempted to extort money from them. Specifically, appellees alleged that shortly after they filed suit, Michael got word to appellees that he was going to file affirmative claims against T. Boone and offered to settle the suit for $20 million. When asked how he came to that number, Michael's attorney said $17 million was for Michael's claims and $3 million was for Michael to forgo giving an interview with *D Magazine*, writing a book, and appearing on the Dr. Phil television program. Appellees alleged Michael's attorney represented that "paying $20 million would give [T. Boone] the opportunity to avoid having his dirty laundry aired in public." They alleged "Mike's false and defamatory statements, his invasion of [appellees'] privacy, and his extortionate threat have caused [appellees] to suffer extreme emotional distress and may have damaged their reputations."

In response to the lawsuit, Michael filed a motion to dismiss under chapter 27 alleging appellees' lawsuit implicated his right to freedom of speech and seeking dismissal of all of appellees' claims. Appellees responded to the motion to dismiss. Both sides attached evidence to their documents. After a hearing, the trial court dismissed Pamela's harmful access by computer claim but denied Michael's motion as to all other claims. Neither side requested findings of fact and conclusions of law, and none were made. Both Michael and Pamela appealed.

Before turning to the merits of the case, we first address appellees' assertion that this Court does not have jurisdiction over this interlocutory appeal. Appellees assert that under the version of the statute governing this case, we do not have jurisdiction over a trial court's decision denying a motion to dismiss under chapter 27. We have previously addressed this issue and

–3–

determined otherwise. *See Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 307 (Tex. App.—Dallas 2013, pet. denied).

Additionally, section 51.014 of the civil practice and remedies code was amended in the 2013 legislative session to specifically allow for an interlocutory appeal from the denial of a motion to dismiss filed under section 27.003. *See* Act of May 24, 2013, 83rd Leg., R.S., H.B. 2935, § 4 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12)). The amendment is not expressly retroactive, nor does it contain a savings clause for pending suits. *See id.* The amendment, however, does not take away or impair the parties' vested rights but simply addresses the court's jurisdiction. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *3 (Tex. App.—Austin Apr. 11, 2014, no pet. h.) (mem. op.). Statutes like the amendment that do not deprive the parties of a substantive right and address the power of the court rather than the rights or obligations of the parties should be applied in cases pending when the statute is enacted. *Id.* Consequently, we conclude the amendment applies in this case. *Id.* The Court has jurisdiction over the appeal and cross-appeal, and appellees' argument to the contrary is without merit.

The stated purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law, and at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West Supp. 2013). To promote these purposes, chapter 27 provides a means for expedited dismissal of unmeritorious suits that are based on, related to, or in response to a party's exercise of free speech. *Id.* § 27.003(a). The statute is to be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

To prevail on a motion to dismiss, the movant bears the initial burden to show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the party's exercise" of free speech. *Id.* § 27.005(b)(1). The "exercise of free speech" is defined as a "communication made in connection with a matter of public concern." *Id.* § 27.001(3). As relevant to this appeal, a "matter of public concern" includes an issue related to (1) health and safety, (2) community well-being, and (3) a public figure. *Id.* § 27.001(7)(A), (B), (D). If the movant satisfies this burden, then the trial court must dismiss the action unless the party who brought the action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

We begin by addressing the first prong: whether Michael met his burden of proving by a preponderance of the evidence that appellees' action is based on, related to, or in response to his exercise of free speech. The parties disagree on the proper standard of review this Court should use when addressing this issue. Michael argues our review is de novo. Appellees contend that while the interpretation of section 27.005(b) is a question of law reviewed de novo, the "preponderance of the evidence" standard is one of factual sufficiency.

Every Texas court of appeals to address the issue on direct appeal has concluded the standard of review on the first prong is de novo. *See Kinney*, 2014 WL 1432012, at *3 (concluding parties' issues present "matters of statutory construction" and are reviewed de novo); *Rio Grande H2O Guardian v. Robert Muller Family P'ship Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *2 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem. op.); *Sierra Club v. Andrews Cnty.*, 418 S.W.3d 711, 715 (Tex. App.—El Paso 2013, pet. filed); *Whisenhunt v. Lippincott*, 416 S.W.3d 689, 695–96 (Tex. App.—Texarkana 2013, pet. filed); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—

Houston [1st Dist.] 2013, pet. denied); *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Whether the standard is de novo or factual sufficiency makes no difference in this case because our result would be the same under either standard.

Michael argues his blog concerns issues related to "addiction, parental abuse, fathers' responsibilities to their children and family dynamics," all of which he contends relate to health and safety and community well-being. In addition to a copy of his blog, he relies on news articles concerning the death of his nephew, Ty, of a possible heroin overdose; an internet article on the definition of addiction from the American Society of Addiction Medicine; a Science Daily internet article entitled "Prescription Drug Misuse Remains a Top Public Health Concern"; and an article from the Texas Department of Family and Protective Services regarding the importance of a father to a family.

While we agree that issues of "addiction, parental abuse, fathers' responsibilities to their children and family dynamics" generally may be matters of public concern, Michael's blog is not a general purveyor of information on those subjects. Rather, Michael's blog is akin to a personal diary of his journey from drug addiction to recovery in which he draws upon his perceived family experiences as an explanation for his addiction. Its primary focus is Michael. As his brief explains, his blog contains stories that "generally concern the historical events that have shaped his behavior and made him ultimately into the person he is today, revealing his own trial and tribulations." And it is just that — a personal account of his life, from his own perspective, in which he also makes remarks about his family members that they contend are false and defamatory. We cannot conclude that statements of private life, such as those recounted in Michael's blog, implicate the broader health and safety concerns or community well-being concerns contemplated by chapter 27.

In reaching this conclusion, we find some guidance in our sister court's decision in *Miranda v. Byles*, 390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Although *Byles* is not a chapter 27 case, it deals with the issue of private facts and public issues. There, Byles sued the defendant for slander and intentional infliction of emotional distress for making false statements that Byles sexually assaulted Byles's step-granddaughter. 390 S.W.3d at 548. In analyzing whether the evidence supported a finding that the statements were false, the court also analyzed whether the allegations implicated a public issue. The defendant argued the issue was a "public" one because it involved allegations of sexual abuse, implicating a "question of public importance." The court explained that an issue "is not a public issue simply because it is a controversy of interest to the public." *Id*. at 554. Instead, the inquiry concerns whether people in the public were debating the specific issue and whether the media was covering that debate. *Id*. A matter can be a public issue "because people in the public are discussing it or because people other than the immediate participants in the controversy are likely to feel the impact of its resolution." *Id*. The court concluded the trial court did not err by determining the Byles issue was a private issue.

As in *Byles*, nothing in this case suggests the public was discussing Michael's blog or that anyone other than the members of this family are likely to feel any impact from it. The topic of Michael's own addiction and allegations of abuse do not implicate any public issue. We conclude Michael failed to establish by a preponderance of the evidence that his family members' lawsuit was based on, related to, or was in response to his right to free speech.

Michael also contends the blog relates to a matter of public concern because it includes his comments on public figures. The statute does not define public figure, but there are numerous cases addressing this issue in the defamation context. Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public

figures. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). General-purpose public figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. *Id*. (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). Limited-purpose public figures are only public figures for a limited range of issues surrounding a public controversy. *Id*. Michael argues his father and brother, T. Boone and Thomas, are both general-purpose public figures.

The rationale behind the public figure doctrine is that the public figure has reached such a level of prominence in the affairs of society that he is risking or inviting the spotlight of public attention and comment, or that he is attempting to influence resolution of issues involved in the controversy. *See Time, Inc. v. Firestone*, 424 U.S. 448, 453 (1976); *Gertz*, 418 U.S. at 345. A person becomes a general-purpose public figure only if he is a "well-known 'celebrity,' his name a 'household word.'" *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1294 (D.C. Cir. 1980). He must have "assumed a role of especial prominence in the affairs of society." *Id*. "The public recognizes him and follows his words and deeds, either because it regards his ideas, conduct, or judgment worthy of its attention or because he actively pursues that consideration." *Id*. Public figures are frequently so famous that they "may be able to transfer their recognition and influence from one field to another." *Id*. n.15; *see Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (en banc). Consequently, it is reasonable to "attribute a public character to all aspects of their lives." *Tavoulareas*, 817 F.2d at 772.

The general-purpose public figure, however, is a "rare creature." *Waldbaum*, 627 F.2d at 1294. Much more common are "public figures for the more limited purpose of certain issues or situations." *Tavoulareas*, 817 F.2d at 772. As the *Gertz* court observed:

> We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public

personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

418 U.S. at 352.

As evidence that Thomas is a general-purpose public figure, Michael relies on a one-paragraph "Frontburner" article published in *D Magazine* entitled, "T. Boone Pickens' Son Proves That His Father's Name Will Be Used In All Headlines Written About His Children's (Alleged) Misdeeds" and an article published in the Courthouse News Service detailing a civil suit against Thomas alleging company mismanagement. This evidence shows only that Thomas had been sued for conduct unrelated to any of the allegations in this lawsuit. Nothing about this evidence shows Thomas is sufficiently famous or notorious to justify being treated as a public figure for all purposes nor does it show he has assumed any prominence with respect to any public controversy that allows him to be considered a public figure for limited purposes.

With respect to T. Boone, Michael relies on the following evidence in his brief: (1) an internet feature article on T. Boone from upstart.bizjournals.com, originally published in the May 2007 *Conde Nast Portfolio* magazine, in a section entitled "Fortune Hunter"; (2) an internet screen print from a Google search for "t. Boone Pickens" showing "[a]bout 10,800,000 results"; (3) a page from www.forbes.com/profile/t-boone-pickens/ showing Pickens's net worth; (4) a three-paragraph article from www.businessweek.com by Pickens, entitled, "How to Convert the Country to Natural Gas"; (5) a June 25, 2008 article from thecaucus.blogs.nytimes.com entitled, "T. Boone Pickens Says No Deal on Swift Boat Bounty," recounting Pickens's offer to "pay anyone" who could disprove accusations by the Swift Boat Veterans for Truth against then presidential candidate John Kerry; and (6) an internet page from www.pickensplan.com, entitled "America is addicted to OPEC oil."

Michael argues these items "show the general public interest" in his father. Our review suggests the evidence presented by Michael shows the public interest in T. Boone arises from his connections and opinions in the energy industry. While we acknowledge the Google search contained a vast number of results, a number alone cannot establish public-figure status. The only evidence relating to the content of the Google results is captured in a single page showing a wikipedia entry, T. Boone's website, the Pickens Plan website, the Forbes listing, the website for T. Boone's foundation, his Twitter account, two articles about this lawsuit, two articles about his grandson's death, and two energy-related articles. Other than the articles on his grandson's death, these entries relate to T. Boone's social media account, business websites, and his involvement in energy issues. Thus, while the evidence shows some previous coverage regarding T. Boone outside the business world, we cannot conclude Michael has made the necessary statutory showing to establish the kind of prominence associated with general-purpose public figures.

In reaching this conclusion, we are persuaded by the analysis in *Tavoulareas.* William P. Tavoulareas was president and chief operating officer of Mobil Corporation, which at the time of the opinion was the nation's largest oil company and third largest industrial corporation. During his tenure, Tavoulareas had actively engaged in the 1970's public debate over the proper response for the United States to the energy crisis, supporting Mobil's reliance on Arab oil supplies. *Tavoulareas*, 817 F.2d at 767. In 1979, *The Washington Post* published a front-page story that Tavoulareas had used his influence as Mobil's president to "set up" his son Peter as a partner in a shipping firm whose business included a multi-million dollar management services contract with Mobil. *Id*. at 769. Tavoulareas and his son brought a libel action. Tavoulareas alleged the newspaper defamed him by falsely implying he breached his fiduciary duties to Mobil, wasted and misused Mobil assets, and diverted assets to his son for his son's benefit. *See*

Erica Frohman Plave, Comment, *Tavoulareas v. Piro: An Extensive Exercise of Independent Judgment*, 56 GEO. WASH. L. REV. 854, 860 (1988).

The court analyzed whether Tavoulareas was a general-purpose public figure, ultimately concluding he was not. The court reasoned that Tavoulareas was "a highly prominent individual, especially in business circles, but his celebrity in society at large does not approach that of a well-known athlete or entertainer—apparently the archetypes of the general purpose public figure." *Id.* at 772 (citing *e.g.*, [Johnny] *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976); *Chuy v. Phila. Eagles Football Club*, 431 F. Supp. 254 (D.C. Pa. 1977), *aff'd*, 595 F.2d 1265 (3d Cir. 1979) (en banc)). The court then analyzed whether Tavoulareas met the test for a limited-purpose public figure and concluded he was a public figure for purposes of the publication at issue. *Id.* at 775.

At best, the evidence here suggests T. Boone could be a limited-purpose public figure. Limited-purpose public figures achieve their status by "thrusting themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" or because they "voluntarily inject [themselves] or [are] drawn into a particular public controversy." *Gertz*, 418 U.S. at 345, 351. The evidence presented by Michael shows T. Boone has put himself in the forefront of issues related to energy. The allegations in this lawsuit, however, have nothing to do with an energy controversy. We conclude Michael has not met his statutory burden to establish his blog relates to health, safety, or community well-being, nor has he met his statutory burden to show that T. Boone and Thomas are public figures.

To the extent Michael asserts he has an unfettered constitutional right "to publish facts and stories about his life and his family" such that he need not show the posts concern matters of public concern as defined by chapter 27, we disagree. By seeking dismissal under chapter 27, Michael had the initial burden to show its provisions apply. That required him to show, by a

–11–

preponderance of the evidence, that appellees' allegations related to a matter of public concern as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(3), (7); 27.005(b). Moreover, appellees allege Michael's blog contains false and defamatory statements about them. While we do not address the truth or falsity of the statements in this proceeding, we note, as has the Texas Supreme Court, "free speech is not absolute and does not insulate defamation." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, No. 12-0522, 2014 WL 1875637, at *1 (Tex. May 9, 2014).

Having concluded Michael failed to make the necessary showing under the first prong, we need not address the second prong of the statute. We conclude the trial court did not err by denying Michael's motion on appellees' claims for invasion of privacy, defamation, libel, and intentional infliction of emotional distress.

We next address Pamela's cross-appeal. The third amended petition alleged a claim for violation of section 143.001 of the Texas Civil Practice and Remedies Code for harmful access by computer. Section 143.001 provides a statutory cause of action for a person who is injured or whose property is injured as a result of a violation of chapter 33 of the Texas Penal Code, if the conduct constituting the violation was committed knowingly or intentionally. TEX. CIV. PRAC. & REM. CODE ANN. § 143.001 (West 2011). The petition pleaded a cause of action under section 33.07(b). In her brief, Pamela asserts she sued Michael based on an email that she had reason to believe Michael sent, using the name Robert Barris, to her business associates, to the CEO and COO of her employer, Morgan Stanley, and to the California Securities Commission, that was critical of Pamela and accused her of using her "mother's woes" to "drum up business."

At the hearing, Pamela's counsel told the trial court he took limited discovery and that Michael had denied sending the email or using the name Robert Barris. Counsel also told the trial court that Pamela did not have evidence that Robert Barris is Michael, other than

–12–

circumstantial evidence. Counsel told the court one of the elements that Pamela must prove is that the "real Robert Barris" did not consent to the sending of the email. The trial court granted Michael's motion to dismiss the claim.

On appeal, Pamela argues that since Michael denied sending the email, there can be no evidence the lawsuit was related to Michael's exercise of free speech and no chapter 27 basis for dismissing the claim. We agree. Michael's motion to dismiss is premised on the notion that one purpose of chapter 27 is to "encourage and safeguard the constitutional rights of persons to speak freely." Given that he has denied sending the email, we conclude chapter 27 does not apply to this cause of action. We also reject Michael's assertion that any error in dismissing the claim was "harmless" because he denied using Robert Barris's name and Pamela did not have evidence to refute his denial through the limited discovery that had been done. We cannot agree. First, given Michael's denial, the statute does not encompass the claim. Second, Pamela should have the opportunity to uncover the identity of Robert Barris and the sender of the email through discovery. We sustain Pamela's issue.

Finally, we note that in the fact statement in his brief, Michael states the trial court was "obligated to grant attorneys' fees" in his favor because it granted his motion, in part, on Pamela's harmful access to computer claim. He asserts this Court should remand the issue of attorney's fees to the trial court to determine the amount to which he is entitled. Other than these bare assertions, Michael does not provide any briefing on an issue regarding attorney's fees. Regardless, we have reversed the trial court's order on Pamela's claim; consequently, we conclude Michael's issue is without merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (providing for attorney's fees to moving party if court orders dismissal of legal action).

We reverse the trial court's order to the extent it dismisses Pamela's claim for harmful access by computer and remand that claim to the trial court for further proceedings consistent with the opinion. We affirm the order in all other respects.

130780F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL O. PICKENS, Appellant

No. 05-13-00780-CV      V.

ELIZABETH CORDIA, PAMELA
PICKENS, T. BOONE PICKENS JR., AND
THOMAS B. PICKENS III, Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-01890-F.
Opinion delivered by Justice Francis;
Justices FitzGerald and Myers participating.

In accordance with this Court's opinion of this date, the trial court's Order on Defendant's Motion to Dismiss is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order dismissing appellee Pamela Pickens's claim for Violation of Texas Civil Practice and Remedies Code § 143.001 Through Harmful Access by Computer and **REMAND** that claim to the trial court for further proceedings consistent with the opinion. In all other respects, the trial court's order is **AFFIRMED**.

It is **ORDERED** that appellees ELIZABETH CORDIA, PAMELA PICKENS, T. BOONE PICKENS JR., AND THOMAS B. PICKENS III recover their costs of this appeal from appellant MICHAEL O. PICKENS.

Judgment entered May 22, 2014

/Molly Francis
_____
MOLLY FRANCIS
JUSTICE

–15–