# IN THE SUPREME COURT OF TEXAS

════════════
No. 16-0096
════════════

JULIE HERSH, PETITIONER,

v.

JOHN TATUM AND MARY ANN TATUM, RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
════════════════════════════════════════════

**Argued March 22, 2017**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a concurring opinion.

The Texas Citizens Participation Act ("the Act")[1] provides a procedure for expeditiously dismissing a non-meritorious legal action that "is based on, relates to, or is in response to the party's exercise of . . . the right of free speech",[2] defined as "a communication made in connection with a matter of public concern."[3] May a defendant obtain dismissal of a suit alleging such a

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. All statutory references are to the Texas Civil Practice & Remedies Code.

[2] *Id.* § 27.005(b)(1).

[3] *Id.* § 27.001(3).

communication if she denies making it? We hold that she may. We also hold that the communication alleged in this case is not extreme and outrageous to support an action for intentional infliction of emotional distress. Accordingly, we reverse the judgment of the court of appeals[4] and remand the case to that court for further proceedings.

**I**

Paul Tatum, a high-school junior, took his life hours after wrecking his mother's car. He had no history of mental illness, and his parents, respondents John and Mary Ann Tatum ("the Tatums"), believed that brain trauma from the car accident was the catalyst for his decision to commit suicide. The Tatums' obituary paying homage to their son in the *Dallas Morning News* stated only that Paul had died "as a result of injuries sustained in an automobile accident".

Petitioner, Julie Hersh, advocates for mental health and suicide prevention. At the time of Paul's death, Hersh was promoting her book, *Struck by Living*, which chronicles her own struggle with depression and suicide attempts. Much of Hersh's advocacy centers on removing the stigma associated with mental illness and suicide. Hersh believes that families who conceal suicide from obituaries prevent awareness of mental-health issues. Hersh advocated this view in a blog post entitled "Don't Omit from the Obit – Can honesty in obituaries help prevent suicide?" She wrote:

> As painful as it might be, honesty allows something positive to emerge from a devastating loss. Omission of the real cause of death allows mental illness to remain impersonal, a silent killer. The 33,000 people who annually die by suicide in the US remain the other guys, not me, not anyone I know. Omission prevents awareness, which inhibits funding for research. Omission allows the uneducated to remain

---

[4] 493 S.W.3d 675 (Tex. App.—Dallas 2015).

uneducated, discarding mental illness as some idleness of the rich and famous or a character flaw; not a real disease.

Hersh published her blog eleven days after Paul Tatum's death. The blog did not mention Paul or allude to his obituary.

Hersh met with Steve Blow, a writer for the *News* whom she knew, to discuss her views on suicide, hoping that he would write a column on the subject and mention her book. Based in part on their conversation, Blow wrote a column some three weeks after Paul Tatum's death calling for greater transparency in obituaries when suicide is the cause of death. The column, entitled "Shrouding Suicide in Secrecy Leaves Its Danger Unaddressed", did not mention the Tatum family but quoted Paul's obituary and discussed the circumstances of his death in detail sufficient to allow a reader to identify him. Importantly for this case, the column read:

> More recently, a paid obituary in this newspaper reported that a popular local high school student died "as a result of injuries sustained in an automobile accident." When one of my colleagues began to inquire, thinking the death deserved news coverage, it turned out to have been a suicide. There was a car crash, all right, but death came from a self-inflicted gunshot wound in a time of remorse afterward.[5]

The Tatums sued Blow and the *News* for defamation. About a year later, the Tatums also sued Hersh for defamation, alleging that she fed Blow the story of Paul's death and encouraged him to write the column, knowing it would help generate publicity for her memoir. Quoting from the Tatums' petition: Hersh "went to Blow and encouraged him to make the Tatum tragedy public"; she "promoted Paul's death and the [o]bituary to Blow . . . as 'news'" and "incited Blow to write about

---

[5] In response to complaints, the *News* revised the column and removed the language quoting Paul Tatum's obituary. The revised column reads, "a paid obituary in this newspaper reported that a popular local high school student died from injuries received in a car crash" instead of "as a result of injuries sustained in an automobile accident."

suicide in obituaries"; "[d]uring that conversation . . . the two discussed the details of the Tatum death and his [o]bituary" with Hersh "feeding the details of the Tatum tragedy to Blow"; and Hersh "encouraged Blow to use [the obituary] as a demonstrative and a specific example of the alleged problem discussed in her blog." Both Hersh and Blow deny discussing Paul's death in their conversation. Blow testified by deposition that, as stated in his column, he first heard about Paul Tatum from a colleague. But other deposition testimony contradicts that assertion.

The Tatums nonsuited their defamation claim against Hersh and sued instead for intentional infliction of emotional distress. Their claim, their petition states, "turn[s] simply on whether Hersh's actions in exploiting the tragedy of a grieving family for her personal gain by encouraging [Blow] to criticize [Paul's obituary] constitute extreme and outrageous conduct." The Tatums claim damages for mental anguish.

Hersh moved under the Act to dismiss the Tatums' action. She argued that the Act applies because the Tatums' claim "'is based on, relates to, or is in response to' [her] exercise of her right of free speech regarding suicide prevention, which the Texas Legislature has recognized is a matter of public concern." Hersh denied that she ever spoke to Blow about Paul Tatum but argued that even if she had, doing so would not have been "extreme and outrageous" conduct sufficient for a claim of intentional infliction of emotional distress. The Tatums responded that suicide in obituaries is a personal grievance, not a matter of public concern; hence, the Act does not apply. Even if it did, they continued, they offered prima facie evidence of each element of their claim so that dismissal was not warranted. The Tatums also argued that Hersh cannot invoke the Act while continuing to deny

4

talking to Blow about Paul's death and obituary—the communication that is the basis of their complaint.

The trial court granted Hersh's motion and dismissed the case with prejudice, but refused to award her attorneys' fees for proceedings in that court, awarding her attorneys' fees conditionally only for an unsuccessful appeal by the Tatums. On appeal, the Tatums argued that the Act does not apply to their action, but if it does, they had provided prima facie evidence to support all the elements of their claim for intentional infliction of emotional distress. The court of appeals, relying on its own precedent, held that a defendant who denies making the communication alleged cannot invoke the Act.[6] The court did not reach the parties' other arguments. The court reversed and remanded the case for further proceedings.[7]

We granted Hersh's petition for review.[8] She argues that:

- an action can be based on, related to, or in response to the exercise of free speech, and therefore subject to the Act, even if the defendant denies making the alleged communication;

- the Tatums did not establish a prima facie case for the elements of a claim for intentional infliction of emotional distress; and

- the trial court erred by denying her request for mandatory attorneys' fees and sanctions.

We address the first two of these arguments in turn and leave the third for the court of appeals on remand.[9]

---

[6] 493 S.W.3d at 676.

[7] *Id.* at 676–677.

[8] 60 Tex. Sup. Ct. J. 224 (Jan. 20, 2017).

[9] Because of our disposition of these issues, we need not reach Hersh's additional argument that the Tatums' action is barred by limitations.

5

## II

The stated purpose of the Act is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law".[10] Under the Act, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, . . . that party may file a motion to dismiss the legal action."[11] "'Exercise of the right of free speech' means a communication made in connection with a matter of public concern."[12] "'Matter of public concern' includes an issue related to . . . health or safety . . . ."[13] "In determining whether a legal action should be dismissed . . . , the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability . . . is based."[14] "[A] court shall dismiss a legal action . . . if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech".[15]

The Tatums allege, as we have quoted from their pleadings, that Hersh and Blow discussed Paul Tatum's death and obituary. Their action, they say, "turn[s] . . . on" that communication. Hersh admits she spoke with Blow about her blog, which did not mention the Tatums, and about suicide

---

[10] TEX. CIV. PRAC. & REM. CODE § 27.002.

[11] *Id.* § 27.003(a).

[12] *Id.* § 27.001(3).

[13] *Id.* § 27.001(7)(A).

[14] *Id.* § 27.006(a).

[15] *Id.* § 27.005(b)(1).

6

awareness, stigmatization, and prevention generally, but she denies discussing Paul Tatum's suicide or obituary.

Because Hersh denies making the communication on which the Tatums' suit is based, the court of appeals held that she could not meet her burden to show that the Act applies, relying on its 2014 decision in *Pickens v. Cordia*.[16] In *Pickens*, Pamela sued Michael, her brother, for sending her business associates an email that was critical of her.[17] Pamela alleged that Michael had sent the email using a false name.[18] He denied sending the email at all.[19] The trial court granted Michael's motion to dismiss under the Act.[20] On appeal, Pamela argued that because Michael denied sending the email, "there can be no evidence the lawsuit was related to Michael's exercise of free speech and no . . . basis [under the Act] for dismissing the claim."[21] The court summarily agreed, apparently reasoning that the purpose of the Act is to protect free speech, and protecting a defendant who denies having

---

[16] 433 S.W.3d 179 (Tex. App.—Dallas 2014, no pet.).

[17] *Id.* at 188.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

7

exercised free speech is inconsistent with the Act's purpose.[22] *Pickens*' application of the Act has been followed by two other courts without analysis.[23]

But *Pickens* ignores Section 27.006(a), which plainly states that "[i]n determining whether a legal action should be dismissed . . . , the court *shall* consider the pleadings" as well as affidavits.[24] Indeed, it would be impossible to determine the basis of a legal action, and thus the applicability of the Act, *without* considering the plaintiff's petition. As we have observed, "the plaintiff's petition . . . , as so often has been said, is the 'best and all-sufficient evidence of the nature of the action.'"[25] The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations. Section 27.005(b)'s requirement that a defendant moving for dismissal show the basis of a legal action "by a preponderance of the evidence" must be read in harmony with

---

[22] *Id.* Here is the court's entire analysis:

> On appeal, Pamela argues that since Michael denied sending the email, there can be no evidence the lawsuit was related to Michael's exercise of free speech and no chapter 27 basis [a reference to the Act] for dismissing the claim. We agree. Michael's motion to dismiss is premised on the notion that one purpose of chapter 27 is to 'encourage and safeguard the constitutional rights of persons to speak freely.' Given that he has denied sending the email, we conclude chapter 27 does not apply to this cause of action.

*Id.* The court followed *Pickens* in this case and one other with no further analysis. *See* 493 S.W.3d at 683–684; *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 882 n.5 (Tex. App.—Dallas 2014, no pet.).

[23] *See Rauhauser v. McGibney*, 508 S.W.3d 377, 385 (Tex. App.—Fort Worth 2014, no pet.) ("We agree that a defendant who denies making any communication may not obtain dismissal by also simultaneously claiming that he was exercising his right of free speech by making a communication."); *Culbertson v. Lykos*, 790 F.3d 608, 632 (5th Cir. 2015) ("Though [*Pickens*, *American Heritage*, and *Rauhauser*] are not from the state's highest court, we conclude they are persuasive.").

[24] TEX. CIV. PRAC. & REM. CODE § 27.006(a) (emphasis added).

[25] *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936) (quoting *Oakland Motor Car Co. v. Jones*, 29 S.W.2d 861, 865 (Tex. Civ. App.—Eastland 1930, no writ)).

Section 27.006(a) rather than in conflict.[26] When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more. We disapprove the contrary statements in *Pickens* and the cases that have followed it.

The Tatums concede that Hersh could have shown the applicability of the Act to their action by offering their petition as a judicial admission but did not do so.[27] But under Section 27.006(a), the trial court was obliged to consider the Tatums' pleadings irrespective of whether Hersh formally offered them as evidence. Under the Act, a defendant moving for dismissal need show only that the plaintiff's "legal action is based on, relates to, or is in response to the [defendant's] exercise of . . . the right of free speech"[28]—that is, "a communication made in connection with a matter of public concern"[29]—not that the communication actually occurred.[30] The Tatums' allegation that Hersh communicated with Blow about the Tatums is the basis of their action against her.

The Tatums argue that the Act cannot apply because Hersh's personal views on the publication of suicide as a cause of death in obituaries is not a "matter of public concern". Clearly, suicide prevention and awareness relate to health, safety, and community well-being, all included

---

[26] *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) ("To the extent possible, we will construe the different provisions in a way that harmonizes rather than conflicts.").

[27] Although the Tatums do not make this concession in their brief, their counsel repeatedly asserted at oral argument: "[W]hat Ms. Hersh could have done was simply offer the Tatums' pleading into evidence under [Texas Rule of Evidence] 801 as an admission by a party opponent and use that to satisfy her preponderance burden . . . . I think you can prove your preponderance burden by utilizing an admission by a party opponent through their own pleadings. I think that would be satisfactory."

[28] TEX. CIV. PRAC. & REM. CODE § 27.005(b).

[29] *Id.* § 27.001(3).

[30] *Id.* § 27.005(b)(1).

9

in the statutory definition of "matters of public concern".[31] By relying on the language used in the Tatums' pleadings, Hersh showed that the Tatums' action is based on her alleged exercise of free speech and thus covered by the Act.

### III

Once a movant meets her burden to prove that the Act applies, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question."[32] Here, the Tatums' claim is for intentional infliction of emotional distress. This tort has four elements: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe.[33]

Regardless of whether the Tatums produced sufficient evidence of the other elements, an issue we need not address, they did not, and cannot, meet the second element. This Court has set a high standard for "extreme and outrageous" conduct, holding that this element is only satisfied if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[34] The Tatums allege that Hersh's encouraging Blow to write a column about their son's suicide while the family was still mourning and vulnerable meets this standard. We disagree. The Tatums' loss was

---

[31] *Id.* § 27.001(7).

[32] *Id.* § 27.005(c).

[33] *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

[34] *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

tragic, but Julie Hersh's indirect actions do not meet the high standard for extreme and outrageous conduct.

For this reason, the Tatums did not meet their burden to provide clear and specific evidence of their prima facie case.

\* \* \* \* \*

Accordingly, we reverse the judgment of the court of appeals and remand the case to that court to consider whether the trial court erred by refusing her attorneys' fees and sanctions and for any other proceedings.

 

 

 

_____

Nathan L. Hecht
Chief Justice

Opinion delivered: June 30, 2017