**Reversed and Remanded and Memorandum Opinion filed November 30, 2021**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00777-CV

### UNDINE TEXAS LLC AND RICK MELCHER, Appellants

### V.

### KARA WARE; RUSSELL WARE; EARL WILLIS; EMILY WILLIS, INDIVIDUALLY AND A/N/F OF T.W. AND K.W., MINORS; DAVID FOWLER; LEIGH ANN FOWLER; NATALIE LEWIS; RYAN MAY; BRITNEY MAY, INDIVIDUALLY AND A/N/F OF V.M. AND A.M., MINORS; AND DENNIS REC, Appellees

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 102743-CV**

## MEMORANDUM OPINION

Appellants Undine Texas LLC and Rick Melcher appeal the trial court's order denying their motion to dismiss pursuant to the Texas Citizens Participation Act. In two issues appellants contend that the trial court should have dismissed appellees' claims for fraud and negligent misrepresentation. Because we agree that

appellants' motion to dismiss should have been granted, we reverse the trial court's order.

## I.   BACKGROUND

Appellees[1] are residents and homeowners in a subdivision of homes located in Brazoria County, Texas. They joined together to sue the neighborhood's water service provider, Undine, and the service provider's employee, Melcher, for various claims related to the quality and safety of their tap water.

In their petition appellees alleged that "Undine advertises and strives to provide the highest quality of service for its customers" and "claims to meet regulatory standards for a clean and safe water drinking supply." Appellees alleged that since Hurricane Harvey in 2017, appellees have "experienced tainted, discolored water throughout their homes and have suffered economic and personal injury damages as a result." Appellees alleged to have lodged many complaints to Undine to no avail. Appellees' alleged that "Undine is in the business of providing consumers safe water. Undine is responsible for treating maintaining and distributing water to customers across the State of Texas, including [appellees]." Appellees alleged that Undine failed to provide quality water wherein appellees have experienced "tainted, discolored water throughout their homes." Appellees alleged that they expect appellants to "provide safe, quality water" but have been forced to "drink, bathe and cook with discolored, hazardous water." Appellees alleged that some have become ill from the water and receive "constant medical treatment." Appellees alleged that in May 2018, Undine, through its representative Melcher, held a meeting with the residents to explain the process of fixing the

---

[1] Kara Ware; Russell Ware; Earl Willis; Emily Willis, individually and a/n/f of T.W. and K.W., Minors; David Fowler; Leigh Ann Fowler; Natalie Lewis; Ryan May; Britney May, individually and a/n/f of V.M. and A.M., Minors; and Dennis Rec.

water filtration system and promised the "water was safe, but regardless it would be fixed."

Appellants filed a motion to dismiss under the TCPA arguing that appellees' fraud and negligent misrepresentation claims implicate appellants' right of free speech and association. Appellants cited to two paragraphs in appellees' petition and argued that appellees' claims for fraud and negligent misrepresentation are based on the communication made during the May 2018 "town hall" meeting for the residents of the subdivision to discuss the discolored water.

Appellees responded that appellants failed to meet their burden to show the TCPA's application to appellees' claims. Appellees also argued that even if the TCPA applied to their claims that appellees could establish by clear and specific evidence a prima facie case for each essential element of their fraud and negligent misrepresentation claims. With regard to their fraud claim, appellees alleged that Undine made assurances as to the repairs and safe quality of the water, that Undine made these representations with the intent that appellees continue to use the water, and that the representations were false because there was no change in the quality of the water and appellees experienced illnesses from continuing to use the water in their homes. With regard to their negligent misrepresentation claim, appellees argued that Undine, through Melcher, made misstatements of facts regarding the water quality and safety and did so to encourage residents to continue to use the water, that appellees had "no choice" but to rely on the false representations and consumed, bathed, and cooked with the tainted water, and that "certain" appellees have contracted illnesses because of the consumption of the water and have received "constant medical treatment."

A day before the hearing on appellants' motion to dismiss, appellees filed an amended response and attached the affidavit of appellee Britney May. In the

3

amended response, appellees argued that their live pleadings "at a bare minimum provided the minimum quantum of evidence" necessary to survive the dismissal motion. Appellees further contended that appellants promised that the water was safe, knew of the issues regarding the water filtration system, did nothing to address the issues, made the representations with the intent to induce residents to use the water, and the representations were false. Appellees alleged that they suffered damages because they had "contracted illnesses from using and consuming the tainted water."

With regard to their negligent misrepresentation claim, appellees contended that appellants made "misstatements of existing facts regarding the water quality, specifically that it was safe to use," appellants "conveyed false information to continue to encourage the residents to live in their homes and continue to use the water" while appellants "continued their enterprise," appellees had no choice to rely on the representations, and "certain" appellees contracted illnesses.

May's affidavit attested that she and her family reside in the subdivision and that for more than two years they have had "tainted and discolored water in [their] entire home." She attested that the water had caused significant damage to their "home, pipes, appliances and resulted in the purchasing of a water filtration home [sic] but it has also caused significant health problems to both our children that have resulted in multiple trips to the hospital and/or doctors' offices. It has also caused severe emotional and mental stress and anxiety." At the end of her affidavit May stated that "we, along with the other [appellees] in this case, have suffered damages in the form of, including but not limited to, medical bills, permanent damage to our home, permanent damage to the value of home [sic] and loss of use of our home."

The trial court denied appellants' motion after a hearing. This interlocutory appeal followed.

## II.    TEXAS CITIZENS PARTICIPATION ACT

### A.    Standard of Review

We review the denial of a motion to dismiss under the Texas Citizens Participation Act (TCPA) de novo. *Dal. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). To be entitled to dismissal under the TCPA, a defendant has the initial burden to show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to" the defendant's exercise of the right to petition, association, or free speech. *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015); *see also* Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961 (codified as amended at Tex. Civ. Prac. & Rem. Code § 27.005(b)).[2] If the defendant satisfies this initial burden, the burden shifts to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). Whether the parties have met their respective burdens is a question of law that we review de novo. *Nunu v. Risk*, 612 S.W.3d 645, 660 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (citing *Dall. Morning News, Inc.*, 579 S.W.3d at 377).

### B.    Does the TCPA Apply to the Challenged Claims?

Appellees sued appellants for fraud and negligent misrepresentation. Appellees do not concede that their claims are covered by the TCPA. Appellants

---

[2] The Legislature amended the TCPA in 2019, but the amendment does not apply to this case, which was filed before September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 3, 11–12, 2019 Tex. Sess. Law Serv. Ch. 378 (West). Any citations to the TCPA in this opinion are to the version of the statute in effect when appellees filed suit.

contend that appellees' claims for fraud and negligent misrepresentation "fall squarely" within the TCPA's scope. First appellants contend that appellees' claims are "based on, relate to, or are in response to [appellants'] exercise of the right of free speech." Appellants next argue that appellees' claims also relate to appellants' exercise of their right of association. In their motion to dismiss, appellants specifically focused solely on appellees' fraud and negligent misrepresentation claims as they related to the May 2018 town hall meeting. Appellees assert that appellants have failed to identify which communications appellants assert are covered by the TCPA and why those communications should fall within the TCPA's protections.

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). "'Matter of public concern' includes an issue related to: (A) health or safety; [or] (B) environmental, economic, or community well-being . . . ." *Id*. § 27.001(7). "[T]he plain language of the Act merely limits its scope to communications involving a public subject– not communications in public forum." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015).

Reviewing appellees' allegations in their petition, the communications made at the town hall meeting are covered by the TCPA. Appellees alleged that the basis of their complaints for fraud and negligent misrepresentation were communications made in connection with a matter of public concern, namely an issue related to health or safety. *See* Tex. Civ. Prac. & Rem. Code § 27.001; *Adams*, 547 S.W.3d at 894 (Tex. 2018) ("The TCPA casts a wide net.");

6

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) ("The TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same."). Appellees' allegations indicate that the heart of appellees' claims for fraud and negligent misrepresentation are about whether appellants' communications regarding the safety and quality of appellees' water was truthful or made recklessly without regard for the truth. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.").

Appellees contend that appellants have failed to show that appellants' representations concerning the color of the water in the Beechwood subdivision is a matter of "public interest." Appellees argue that in this case the "statements at issue relate to a small group of individuals" and that there is "no evidence . . . that the public at large has any interest in this private dispute." Appellees contend that the "allegations arise from and are related to a private communication, within the private offices of the Company."

There is no requirement that the statements be made "publicly." *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 899; *Lippincott*, 462 S.W.3d at 509 ("The plain language of the statute imposes no requirement that the form of the communication be public."). The TCPA "requires only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, . . . and other identified matters of public concern chosen by the Legislature." *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900. There is also no requirement that the "public at large" have an "interest" in the communication. *See Lippincott*, 462 S.W.3d at 509–10 (holding that communications about a private employment matter in the context of providing medical services related to

7

health and safety, and therefore, the communications qualified as a matter of public concern under the TCPA); *see also ExxonMobil Pipeline Co.*, 512 S.W.3d at 900 ("The TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same . . . .").

Appellees argue that this case is analogous to *Pickens v. Cordia* because both cases concern "private statements." *See* 433 S.W.3d 179, 184 (Tex. App.— Dallas 2014, no pet.). In *Pickens*, the defendant argued that his personal blog, detailing issues related to addiction, parental abuse, parental responsibility, and family dynamics, related to health and safety and community well-being under the TCPA. *Id*. at 184. The court agreed that these issues generally may be matters of public concern, but that the defendant's blog was more of a "personal diary." *Id*. Because the defendant's blog was a "personal account of his life" the court concluded that his statements did not implicate the "broader health and safety concerns or community well-being concerns" as contemplated by the TCPA. *Id*.

Appellees also argue that *Miranda v. Byles* supports their contention that the statements made by appellants are concerning a private matter and not one of public concern. 390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In *Miranda*, the defendant argued that the communication was one of public concern or importance because it involved allegations of sexual abuse. *Id*. at 554. Outside of the context of the TCPA the court held that an issue "is not a public issue simply because it is a controversy of interest to the public" but instead that a matter may be a public issue "because people in the public are discussing it or because people other than the immediate participants in the controversy are likely to feel the impact of its resolution." *Id*. at 554.

8

We disagree that this case is analogous to either *Pickens* or *Miranda*. Appellees alleged in their petition that appellants' representations and communications regarding the water they provided reached "consumers across the State of Texas," including appellees and that appellants claimed to meet regulatory standards for a clean and safe water drinking supply. The original petition concerns fourteen individuals bringing such claims against appellants, thus having broader implications than those in either *Pickens* or *Miranda*.

Having concluded that the TCPA applies to appellees' claims for fraud and negligent misrepresentation, we now determine whether appellees have presented "clear and specific" evidence of a prima facie case.

## C. Did Appellees Present Clear and Specific Evidence of a Prima Facie Case?

Appellants argue that appellees failed to show a prima facie case because only May filed an affidavit and none of the other appellees supported their claims with clear and specific evidence. Appellants contend that because the petition does not include "individualized allegations" to support the claims that the appellees cannot satisfy their burden of showing a prima facie case by clear and specific evidence. Appellants argue that the petition alone cannot satisfy appellees' burden.

To defend against appellants' motion to dismiss, appellees' burden under the TCPA was to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem Code § 27.005(c). To prevail on a claim of fraud, "a plaintiff must show: (1) the defendant 'made a material misrepresentation that was false'; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably

9

relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). To prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed "'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank*, 546 S.W.3d at 653–54 (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

"Bare baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015). General averments of direct economic loss and lost profits, without more, do not satisfy the minimum requirements of the TCPA. *See id*. at 593 (affidavit devoid of specific facts illustrating how disparaging remarks actually caused losses was not enough to defeat TCPA motion); *see also Bedford v. Spassoff*, 520 S.W.3d 901, 906 (Tex. 2017) ("'[G]eneral averments of direct economic losses and lost profits' do not satisfy the [TCPA's] clear-and-specific-evidence standard without 'specific facts illustrating how [a defendant's] alleged remarks about [a plaintiff's] activities actually caused such losses.'").

"[A] prima facie case is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *S & S Emergency Training Sols., Inc. v. Elliot*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *In re Lipsky*, 460 S.W.3d at 590)). "Direct evidence of damages is not required, but the

evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." *Id*.

Appellees generally stated that they suffered damages because they had "contracted illnesses from using and consuming the tainted water." In the only affidavit attached to appellees' response, appellee May attested that the water had caused significant damage to her "home, pipes, [and] appliances," resulted in the purchase of a water filtration system, "caused significant health problems," led to "multiple trips to the hospital and/or doctors' offices" as well as "severe emotional and mental stress and anxiety," and that "we, along with the other [appellees] in this case, have suffered damages in the form of, including but not limited to, medical bills, permanent damage to our home, permanent damage to the value of home [sic] and loss of use of our home."

Appellees do not attempt to illicit specific facts illustrating how their reliance on appellants' representations caused "significant" damage to their homes, pipes and appliances, caused "significant" health problems, or caused "permanent" damage to their homes. Appellees do not even attempt to state specifically how their homes were "significantly" damaged, how their homes were permanently damaged, what alleged health problems they all now endure or have endured, how or to what extent the values of their homes were permanently damaged, or the extent, nature, duration, or severity of any alleged mental anguish or distress. Instead, appellees recite conclusory statements and do not provide a sufficient factual basis to establish a prima facie case. *See In re Lipsky*, 460 S.W.3d at 593 *Chrismon v. Brown*, 246 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding affidavit was conclusory where it provided "no facts showing the basis for the alleged damages, the periods of time in which they allegedly were suffered, or how the dollar amounts were determined");*see also Deaver v. Desai*,

11

483 S.W.3d 668, 677 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (allegation that the plaintiffs suffered "shame, embarrassment, humiliation, and mental anguish" was not clear and specific evidence because it did not "establish explicitly or with particularity how they suffered their emotional distress"); *Jackson v. Gutierrez*, 77 S.W.3d 898, 903 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (testimony was conclusory because plaintiff only stated that she suffered mental anguish but did not provide any evidence of nature, duration, or severity).

Because appellees failed to establish a prima facie case for their claims of fraud and negligent misrepresentation, we sustain appellants' second issue on appeal.

**D.     Appellees' Remaining Fraud and Negligent Misrepresentation Claims**

Appellees also alleged in their petition that appellant Undine advertises that it provides the "highest quality" and "holds itself to the highest standard of providing quality water to its customers." In their motion to dismiss, appellants only challenged the alleged statements at the May 2018 town hall meeting. In their motion to dismiss, appellants argued that appellees' claims were "founded on a statement made at a community meeting." Appellees argue that their petition "reveals an assortment of representations by Appellants that serve as the foundation for their claims." We agree with appellees. Under the TCPA, it is the movant's burden to show that the claim is based on, relates to, or is in response to the movant's exercise of the right to free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b). Appellants did not address the other alleged misrepresentations upon which appellees' claims for fraud and negligent misrepresentation are based and, as a result, such claims are not at issue in this appeal. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894–95 (Tex. 2018) (discussing allegedly defamatory statements

made by the defendant and analyzing similar statements made in the defendant's blog separately from statements made in an email to determine whether the TCPA applied to such statements).

### III. CONCLUSION

Because the TCPA applies to appellees' claims with regard to appellants' representations at the May 2018 town hall meeting and appellees have failed to submit clear and specific evidence to show a prima facie case, we reverse the trial court's order denying the motion to dismiss. The case is remanded and the trial court is ordered to dismiss with prejudice appellees' claims of fraud and negligent misrepresentation based on the May 2018 townhall meeting under the Texas Citizens Participation Act before otherwise proceeding with the underlying cause.

/s/    Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Spain.