

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00116-CV

———————————————————

LARRY K. ANDERS, Appellant

V.

LESLIE OATES, DENISE OATES, AND OATES ENTERPRISES, LLC,
Appellees

AND

———————————————————

No. 02-19-00188-CV

———————————————————

LARRY K. ANDERS, Appellant

V.

STETSON OATES, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV-17-09-787

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This is an anti-SLAPP case. The trial court denied two motions filed by Appellant Larry Anders seeking dismissal under the Texas Citizens Participation Act (TCPA), Tex. Civ. Prac. & Rem. Code Ann. § 27.003, of the claims brought against him by Appellees Leslie Oates, Denise Oates, Stetson Oates, and Oates Enterprises, LLC. Because the TCPA does not apply to the claims against Anders, we affirm.

## Background

Appellees sued Anders for claims arising out of (1) the execution and implementation of an interest purchase agreement (IPA) through which Leslie and Denise sold two business that they owned—LO Transport, Inc. and LO Oilfield Services, LLC (the LO Companies)—and (2) the execution of an employment agreement between LO Transport and Stetson Oates, Leslie and Denise's son.

Appellees alleged the following facts in their respective pleadings. Stetson was the LO Companies' CEO, and in 2017, he was approached by Jonathan Collura about buying the companies. Collura represented SAF Capital Partners, LLC, a joint venture between Collura and Anders. To effectuate the sale, SAF Capital formed a limited liability company (the LLC) to take ownership of the LO Companies and formed a limited partnership (the LP) to be the LLC's sole member. SAF Capital is the LP's general partner.[1]

---

[1] We refer to SAF Capital, the LP, and the LLC collectively as "the SAF entities."

3

Collura and Anders approached CrossFirst Bank for a loan to fund the purchase. Collura represented to the bank that the purchase would be funded through three sources: $4 million in cash equity from the LLC and its investors, $3 million from mezzanine lender Morrison Enterprises, LLC; and a loan they hoped to secure from CrossFirst.[2] Collura and Anders both represented to CrossFirst that Stetson would stay on with LO Transport after the purchase. CrossFirst approved the loan. On January 12, 2017, Anders and Collura spoke to Stetson on the phone to discuss terms for him staying with the company after the sale. That discussion included their offering Stetson an employment agreement and minority ownership in the entity acquiring the LO Companies.[3]

On February 3, 2017, Leslie and Denise signed the IPA under which they agreed to sell 100% of the ownership interest in the LO Companies to the LLC for $11 million.[4] Collura signed the agreement on behalf of the LLC. Stetson executed a

[2]According to the documents provided to CrossFirst, in addition to applying for a loan to fund the purchase, they also applied for a $1 million working capital line of credit.

[3]Leslie and Denise—neither of whom were on the call—alleged that the phone call included discussion of giving Stetson a minority interest "in the SAF entity acquiring the LO Companies." The LLC acquired the entities, but Stetson was granted a minority interest (through Oates Enterprises) in the LP.

[4]Under the terms of the IPA, the aggregate purchase price was $11 million payable within 30 days of closing in cash or cash equivalents, subject to adjustment; the parties agreed that the purchase price was based on an estimated amount of working capital and that if that estimate as of the closing date was "less than the total current assets set forth in the Balance Sheet of Company as of January 31, 2017, less

4

five-year employment agreement with the LLC and was given a minority ownership interest in the LP through Oates Enterprises, an entity he managed.

On February 15, 2017, Leslie and Denise received wire transfers totaling $8 million toward the purchase price. In July 2017, Leslie and Denise loaned LO Transport $300,000 under a promissory note.

In September 2017, having not been paid the remaining $3 million of the purchase price, Leslie and Denise sued Collura and the SAF entities. Through amended petitions, they added Anders, Morrison Enterprises, and LO Transport as defendants. According to Leslie and Denise, because they did not have any contact with Anders in negotiating or executing the IPA, they were initially unaware of Anders's involvement in the SAF entities and only learned of his involvement through discovery.

Leslie and Denise contended that the defendants had failed to pay the full purchase price for the sale. They further alleged that the defendants had failed to pay the LO Companies' debts and that, as a result, Leslie and Denise had been receiving harassing debt-collection calls regarding company debts. They asserted that when they had not received the full purchase price within thirty days of closing, they asked when payment would be received and that Stetson was told that they would be paid

---

liabilities set forth in the Balance Sheet of Company as of January 31, 2017," then the purchase price would be "reduced by the difference."

5

before the end of the year.[5] They alleged that they relied on this promise in agreeing to loan the $300,000 to LO Transport.

Based on these allegations, Leslie and Denise sued Anders for tortious interference with the IPA, violations of the Texas Securities Act, statutory fraud, common-law fraud, and tortious interference with the promissory note. The defendants—except Anders and Morrison Enterprises—jointly answered, filed counterclaims against Leslie and Denise, and joined Stetson as a third-party defendant. Among other facts, they alleged that Leslie and Denise had "secretly and fraudulently concealed the true financial condition of LO" Transport. They also alleged that they had paid the remaining $3 million of the purchase price by giving Stetson the minority interest in the LP.

After Anders answered, Stetson countersued the defendants, including Anders, for tortious interference with his employment contract, common-law fraud, fraud by nondisclosure, fraudulent inducement, and civil conspiracy. Oates Enterprises intervened in the suit and asserted claims against the same defendants.

Anders filed a TCPA motion to dismiss the claims against him by Leslie, Denise, and Oates Enterprises. Anders asserted that Leslie and Denise sought "to impose liability on [him] simply because he was 'part' of the ownership group that acquired the LO Companies." He argued that "[b]ecause the Oates[es]' pleadings and

---

[5]Leslie and Denise's petition did not say who they asked about the payment or who told Stetson that the funds would be paid before the end of the year.

6

deposition testimony establish that their claims against Anders arise out of his exercise of the right of association," those claims should be dismissed.  He further argued that Oates Enterprises' claims against him were "based upon and/or relate[d] to alleged communications between Anders and others in pursuit of a common business enterprise" and therefore also implicated the exercise of the right of association.

In Anders's supplemental brief in support of his motion, he argued that if the court were to construe their claims "to allege that Anders made a direct misrepresentation to [them] regarding the purchase price," the TCPA would then apply because the claim "would be based on an alleged communication made in connection with an issue relating to 'economic' concerns and thereby implicates the 'exercise of the right of free speech'" as defined in the TCPA.  He did not raise the issue at the hearing.[6]

Anders filed a separate TCPA motion to dismiss Stetson's claims.  He contended that Stetson's tortious interference claim was based on his belief that after the sale of the LO Companies, "Anders . . . was communicating to others . . . in connection with the management and oversight of LO Transport" and that Stetson's fraud claims were "based on alleged false or misleading representations by Anders

---

[6]Leslie and Denise argue on appeal that Anders may not rely on the exercise of free speech because he raised that ground for the first time in his supplemental brief in support of his motion, which was filed "well after the sixty-day deadline imposed by section 27.003(b)" and three days before the hearing on the motion.  We need not address this argument because we hold that the claims against him were not based on, related to, or in response to the exercise of free speech.

7

regarding whether Defendants were financing the purchase of the LO Companies and that there would be sufficient funds to operate LO Transport following the acquisition." Anders argued that Stetson's claims against him were based on, related to, or in response to the exercise of the right of association and the right of free speech "because they concern alleged communications between Anders and others in pursuit of common interests and made in connection with matters relating to economic well-being."

After a hearing, the trial court signed an order denying Anders's motion as to the claims bought by Leslie, Denise, and Oates Enterprises and an order denying Anders's motion as to Stetson's claims. Anders filed a separate appeal from each order; this court consolidated those appeals.

## Discussion

Anders brings three issues in his appeal against Leslie, Denise, and Oates Enterprises: whether the trial court erred by denying his motion to dismiss Leslie and Denise's claims against him (first issue), whether the trial court erred by denying his motion to dismiss Oates Enterprises' claims against him (second issue), and whether the trial court erred by not awarding Anders his reasonable attorney's fees, costs, and sanctions (third issue). In Anders's appeal from the trial court's order denying his motion to dismiss Stetson's claims, he raises two issues: whether the trial court erred by denying his motion to dismiss Stetson's claims and whether the trial court erred by not awarding him his reasonable attorney's fees, costs, and sanctions.

8

## I. The allegations against Anders

Leslie and Denise asserted the following claims against Anders: (1) interference with the IPA; (2) violations of article 581-33 of the Texas Securities Act; (3) statutory fraud under Texas Business & Commerce Code Section 27.01; (4) common law fraud; (5) fraud by nondisclosure; (6) fraudulent inducement; (7) civil conspiracy; and (8) interference with the promissory note executed by LO Transport. They further sought declaratory relief that the promissory note and any covenant-not-to-compete agreement executed by Leslie, Denise, Stetson, or Oates Enterprises with the LO Companies and any affiliated companies and subsidiaries were terminated.

In support of these claims, Leslie and Denise alleged that Anders and Collura approached CrossFirst about financing the purchase and represented to CrossFirst that SAF Capital and its investors would provide $4 million in cash equity to fund the purchase of the LO Companies and that Stetson would remain with the company after the acquisition. Collura and Anders then set up a January 12, 2017 phone call with Stetson to discuss terms for his remaining with the company. During that call, the parties discussed Stetson acquiring a minority interest "in the SAF entity acquiring the LO Companies." Two days later, however, Collura informed Stetson that the acquisition would proceed on terms set out in a letter of intent the parties had signed, which did not include any provision for funding part of the sale by giving Stetson an interest in the LLC or the LP. Likewise, the IPA did not discuss partially funding the sale by giving Stetson an interest in the LLC or the LP.

9

Leslie and Denise further alleged that Anders and Collura never intended to provide the cash or cash equivalent to pay the rest of the purchase price, despite representing to them[7] and to CrossFirst that the $11 million would be paid in cash or cash equivalent and representing to their auditor after the purchase that the sale had been funded through $6 million in cash and $5 million in bank debt. They also contended that after the purchase, Collura began making "unusual and extraordinary expenditures" to benefit himself, causing the LO Companies to begin failing to pay other obligations.

Stetson adopted most of the facts in Leslie and Denise's petition and alleged that "one or more of the Counter-Defendants" compromised his ability to properly perform his duties by taking excessive amounts of money from and "otherwise caus[ing] harm" to LO Transport. He further alleged that one or more of the counter-defendants "prohibited and inhibited" him from properly performing his duties; encouraged, induced, or coerced him to convey a portion of Oates Enterprises' interest in the LP[8] for less than the stated value by making or participating in false representations; made or participated in misrepresentations to induce him to sign the

[7]Leslie and Denise did not specify who made these representations, saying only that "Defendants" made verbal and written representations that the $11 million purchase price would be paid to them in cash. Anders's TCPA motion states that in Denise's deposition, she "conceded that she had never met or communicated with Anders."

[8]Stetson did not identify to whom he was coerced to convey the interest.

employment contract and to induce Oates Enterprises to take an ownership interest in the LP; and failed to disclose that they and their representatives were financing the purchase of the LO Companies. Stetson asserted claims for tortious interference with his contract with LO Transport, common law fraud, fraud by nondisclosure, fraudulent inducement, and conspiracy. He pled all claims collectively against all of the counter-defendants, including Anders.

Oates Enterprises also adopted most of the facts in Leslie and Denise's petition and made allegations nearly identical to Stetson's. It alleged that "one or more of the Defendants," including Anders, "took excessive amounts of money from" and "otherwise caused harm to" LO Transport, compromising Stetson's ability to perform his duties; prohibited and inhibited Stetson from properly performing his duties and properly operating LO Transport; and encouraged, induced, or coerced Stetson to convey Oates Enterprises' interest in the LP[9] for less than the stated value by making or participating in false representations. It further alleged that the Defendants failed to disclose to it, Stetson, Leslie, or Denise that they and their representatives were financing the purchase of the LO Companies. Based on these allegations, Oates Enterprises alleged claims for tortious interference with the contract between Stetson and LO Transport, fraud by nondisclosure, fraudulent inducement, and civil conspiracy, and it requested an accounting.

---

[9]Like Stetson, Oates Enterprises did not identify to whom it was coerced to convey the interest.

## II. Anders's allegation of the exercise of the right of association

Anders's TCPA motion to dismiss Leslie and Denise's claims asserted that the TCPA applied because their claims were based on, related to, or in response to Anders's exercise of the right of association. He asserted that Leslie and Denise's claims against him "arise out of the mere fact that he was 'part' of and 'associated' with the individuals and entities which acquired the LO Companies" and that they essentially contended that he "was part of a 'scheme' that conspired to deprive them of receipt of the full $11 million purchase price for which they agreed to sell the LO Companies." Anders further argued that all of the factual allegations against him "concern [his] alleged communications with the others engaged in a common business enterprise: acquisition of the LO Companies" and were therefore related "to [his] exercise of the right of association." Anders contended that he "would have to have communicated with his alleged co-conspirators in order to know of and participate in the alleged 'scheme'"; that he never spoke with Leslie and Denise and thus their claims were based on his alleged scheme with the other defendants; and that "it is indisputable that Anders and those other defendants—namely Collura and the Defendant entities (acting through Collura and/or Soumit Roy[, Collura's attorney])— had 'join[ed] together to collectively express, promote, pursue, or defend common interests,' specifically, their common business enterprise." Anders made a similar argument regarding Oates Enterprises' claims, asserting that the TCPA applied

12

because the claims "concern alleged communications between Anders and others in pursuit of common business interests.

As for Stetson's claims, Anders asserted in his TCPA motion that "Stetson's tortious interference claim is undeniably based on and relates to alleged communications between individuals in pursuit of a common interest, *i.e.*, the operation of a shared business enterprise" and that the claim was therefore based on Anders's exercise of the right of association. Anders further argued that "the pre-closing representations allegedly made by Anders and/or Collura regarding the anticipated acquisition and operation of LO Transport are covered by the TCPA's exercise of the right of association" and that Stetson's fraud claims thus fell within the TCPA's application.

## III. No claims implicate the right of association under the TCPA

The applicable version of the TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 960 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)). We have held that the plain meaning of the word "common" in this definition "requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit." *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied). Instead, the statute "requir[es] interests common to the public or a group." *Id.* at 575.

13

Assuming that a "common business enterprise" constitutes an interest common to the public or a group for purposes of the TCPA, Anders's motion fell short of establishing the TCPA's application to Leslie and Denise's claims. They alleged that the purpose for which Anders and others joined together and communicated was to participate in a fraudulent scheme to induce the sale of their business and the execution of a promissory note, not to participate in a legitimate business enterprise. This court has held that these types of allegations do not bring a claim within the TCPA's application. *Id.* at 588; *see also Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 67 (Tex. App.—Dallas 2019, pet. denied).

On appeal, Anders argues that "[t]he evidence in this case demonstrates that Anders, Collura, Stetson, and Roy joined together *to purchase and run* LO Transport— not to commit torts." Thus, he argues, *Kawcak* does not apply. Anders similarly argues in his reply brief that *Kawcak* does not apply in this case because "Anders did not join together with Collura to commit a tort—he joined together with Collura, Soumit Roy, and [Stetson] to acquire and operate LO Transport in a common business enterprise." To agree with Anders we would have to ignore the facts alleged by Leslie and Denise and look only to whether the evidence he produced defeated the claims against him. However, "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations," *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017), and therefore "the pleadings, especially the plaintiff's allegations, are the best evidence to determine the nature of a legal action

14

and the applicability of the TCPA." *Garrison Inv. Grp. LP v. Lloyd Jones Capital, LLC*, No. 02-19-00115-CV, 2019 WL 5996979, at *3 (Tex. App.—Fort Worth Nov. 14, 2019, no pet.) (mem. op.). Leslie and Denise's pleadings do not assert facts supporting Anders's argument that the claims in the case were based on, related to, or in response to communications arising from his and others' joining together to collectively express, promote, pursue, or defend "common interests" as we have interpreted that term. The only common interest they alleged was Anders's joining with others to commit fraud and similar torts for their own pecuniary benefit. Thus, regardless of the ultimate merits of the case, Leslie and Denise's claims are not based on, related to, or in response to Anders's right of association. *See Kawcak*, 582 S.W.3d at 575, 588.

Like Leslie and Denise's suit, Oates Enterprises' pleadings do not assert claims that are based on, related to, or in response to Anders's exercise of the right of association.[10] The pleadings assert that the defendants joined together to perpetuate a

_____

[10]Anders asserts in his reply brief that Leslie and Denise's claims against him are based on a different set of facts than those on which Oates Enterprises based its claims, and as such, "the question of whether the TCPA applies to Oates Enterprises' claims against Anders requires a separate analysis with respect to the Oates[es]' claims." However, like Leslie and Denise's claims, Oates Enterprises' claims are based on allegations that Anders and others conspired to commit tortious acts for their own personal benefit. Oates Enterprises alleged that the defendants made fraudulent representations to induce the sale of LO Transport and committed tortious acts after the sale and Stetson's execution of the employment agreement. Thus, as with Leslie and Denise's claims, an analysis of whether the TCPA applies to Oates Enterprises' claims turns on whether the freedom of association protected by the TCPA encompasses alleged communications made in order to commit tortious acts.

15

fraud and, having done so, further tortiously acted to endanger the viability of the company—and thus Stetson's livelihood—and to fraudulently induce Stetson to convey something of value without consideration. These allegations do not support a characterization of Oates Enterprises' claims as arising from the defendants joining together simply to own and operate a business, even assuming that their communications in doing so would constitute the exercise of the right of association. Instead, the pleadings set out a series of fraudulent and otherwise tortious acts to which Anders was a party and which benefited only Anders and the other alleged tortfeasors and communications made in furtherance of those tortious acts. The pleadings do not support a conclusion that Oates Enterprises' claims were based on, related to, or in response to Anders's exercise of the right of association. *See id.*

The motion attacking Stetson's claims fails for the same reason. He also did not allege communications about a legitimate plan to acquire and operate a business enterprise, assuming such communications could be considered as relating to interests common to the public or a group. Instead, Stetson alleged communications related to a plan to commit fraud and other tortious acts for the sole benefit of the tortfeasors. As such, his claims are not based on, related to, or in response to Anders's right of association. *See id.*

## IV.   Anders's arguments on the right of free speech

In Anders's supplemental brief supporting his TCPA motion against Leslie and Denise, Anders asserted that "even if [Leslie and Denise's] claims could somehow be

16

construed to allege that Anders made a direct misrepresentation to [Leslie and Denise] regarding the purchase price," "the TCPA would nevertheless apply because such a claim would be based on an alleged communication made in connection with an issue relating to 'economic' concerns" and therefore Leslie and Denise's claims were based on, related to, or in response to the exercise of free speech. He similarly argued that Oates Enterprises' claims were based on, related to, or in response to the exercise of free speech because "each of the alleged misrepresentations on their face relate to the economic well-being of LO Transport and/or the SAF Defendants." As for Stetson's claims, Anders's motion likewise asserted that because each of Stetson's claims was based on or related to communications between Anders and others about "the economic well-being of LO Transport and/or the SAF Defendants,"[11] these communications were on a matter of public concern and were thus based on or related to Anders's exercise of the right of free speech.

## V. No claims implicate the right of free speech under the TCPA

At the time of the trial court's ruling on Anders's motions, the TCPA defined the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern," and it defined a "matter of public concern" as including "an issue related to: (A) health or safety; (B) environmental, economic, or

---

[11]Anders used the collective term "the SAF Defendants" but did not explain which defendants are included within that term. However, Leslie and Denise used that term in their live pleading to collectively refer to the SAF entities, Collura, and Anders, and we assume that Anders used that term the same way.

community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Act of May 24, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3), (7)). We review "whether communications are on matters of public concern under a *de novo* standard of review." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019) (citation and internal quotation marks omitted).

The Texas Supreme Court's recent opinion in *Creative Oil & Gas, LLC* is instructive. In that case, the Supreme Court first considered the defendant appellee's argument that the plaintiff's claims were based on statements concerning a good, product, or service, and were therefore statements on a matter of public concern. The communications at issue were about an oil and gas lease, production from a well under the lease, and the lease's termination. *Id.* at 129, 134. The Supreme Court emphasized that "the statute refers to a 'good, product, or service *in the marketplace*.'" *Id.* at 134 (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)(E)). The court reasoned that "[b]y referring to communications made in connection with goods, products, or services 'in the marketplace,' the definition confirms that the right of free speech involves communications connected to 'a matter of *public* concern.'" *Id.* The court stated that "when construing the TCPA's list of the kinds of things meant by 'matter of public concern,' we should not ignore the common meaning of the words being defined" and that "[t]he phrase 'matter of public concern' commonly refers to

18

matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Id.* at 135. The court noted that while it had "previously held that private communications are sometimes covered by the TCPA," those cases "involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Id.* at 136.

The Supreme Court then considered whether the claims at issue implicated economic well-being "because the claims affect the economic interest of the parties and others with an interest in the well." *Id.* at 137. To that argument, the court stated, "not every communication related somehow to one of the broad categories set out in [the definition of matters of public concern] always regards a matter of public concern," and "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id. Creative Oil & Gas* makes clear that to be a matter of public concern for purposes of the TCPA, the matter must involve more than the private pecuniary interests of the parties. *Id.*

Assuming for purposes of this opinion that in some cases, communications related to the economic well-being of a company could be communications on a matter of public concern for purposes of the applicable version of the TCPA, the communications alleged in this case were not. The alleged communications underpinning the claims were made in connection with inducing through fraudulent means Leslie and Denise's sale of the LO Companies and their execution of the

19

promissory note and with tortiously hindering LO Transport's performance of its obligations. The alleged communications were not related to matters of political, social, or other concern to the community and instead related only to the pecuniary interests of the defendants. *See id.*; *see also Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (stating that the plain language of the TCPA limits its scope to communications involving a public subject). Communications made only as part of a plan to fraudulently purchase and then damage a company or communications made by co-conspirators in order to further only their own economic well-being are not matters related to economic well-being so as to fit within the TCPA. The TCPA thus does not apply to Leslie and Denise's claims.

Stetson likewise did not allege claims based on communications related to the economic well-being of anyone other than the defendants. The communications he alleged were about fraudulently inducing Leslie and Denise's sale of LO Transport, his own execution of an employment agreement, and his transfer of his interest in the LP, as well as to tortiously interfering with the employment agreement. These alleged communications, which related to the private pecuniary interests of the defendants, are not matters related to economic well-being so as to fit within the TCPA. *See Creative Oil & Gas*, 591 S.W.3d at 137. For the same reasons, Oates Enterprises' claims were not based on, related to, or in response to Anders's exercise of the right of free speech. *See id.*

We overrule Anders's first and second issues in his appeal against Leslie, Denise, and Oates Enterprises and his first issue in his appeal against Stetson. Because those issues are dispositive, we do not address his remaining issues. *See* Tex. R. App. P. 47.4.

## Conclusion

Having overruled Anders's first issue in his appeal against Stetson Oates and his first and second issues in his appeal against Leslie Oates, Denise Oates, and Oates Enterprises, which are dispositive of both appeals, we affirm the trial court's orders denying Anders's TCPA motions.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  April 9, 2020

21