**Affirm in part, Reverse in part, and Remand, and Opinion Filed August 20, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00050-CV**

**WINSTEAD PC, Appellant**
**V.**
**DEWEY M. MOORE, JR., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-15858**

## OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

In this accelerated interlocutory appeal, Winstead PC appeals the trial court's order denying its motion to dismiss appellee Dewey M. Moore, Jr.'s claims pursuant to the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. In three issues, Winstead argues that (i) the trial court erred by ruling that the TCPA does not apply to Moore's claims, (ii) Moore failed to establish a prima facie case for each element of his causes of action, and (iii) Winstead established the affirmative defense of attorney immunity.

We reverse the trial court's order in part and affirm in part, holding that the TCPA applies to Moore's legal-malpractice and equitable-indemnification claims but does not apply to Moore's negligent-misrepresentation claim. Because the trial court did not reach steps two and three of the TCPA analysis regarding the first two claims, we remand so that the trial court may do so in the first instance.

## I.  Background

### A.    Factual Allegations

We draw the following factual allegations and quotations from Moore's live pleading, his second amended petition.

Moore is the former Chairman, CEO, and President of the Institute for Wealth Holdings, Inc. (IWH) and the former President and Chief Compliance Officer for two IWH subsidiaries (IWA and IWC). In general, IWH, its subsidiaries, and their employees provide investment advisory services.

Winstead was engaged to prepare two sets of securities offering statements for IWH. In October 2017, Winstead completed preparation of a Private Placement Memorandum (PPM) for Series D Convertible Preferred Stock for IWH pursuant to Regulation D of the Securities Act of 1933 (2017 Reg D Offering). In January 2018, Christopher D. Williams of Winstead issued an Opinion Letter to IWH that included a statement "consent[ing] to the use of this opinion as an exhibit to the Offering Statement." In February 2018, Winstead completed the Offering Circular for the

Series D Convertible Preferred Stock and Common Stock pursuant to Regulation A of the Securities Act (2018 Reg A Offering).

In August 2018, the SEC issued an Examination Letter in which the SEC found, under the heading "Participation in Fraudulent Private Offerings," that the 2017 Reg D Offering Memorandum and the 2018 Reg A Offering Memorandum "contained material misstatements with respect to IWH, the Advisers [IWM, IWA, and IWC], and their leadership, including exaggerated, inaccurate, and misleading statements to the potential investors to whom these materials were provided."

As a direct result of Winstead's "various failures and malpractice," Moore was required to resign his employment positions and as a director of IWH. He obtained employment with a different company but later lost that position because IWA filed "an Amended U5" based on the SEC Examination Letter and the Amended U5 contained negative statements about Moore.

## B.  Procedural History

On September 27, 2019, Moore sued Winstead. In his live pleading, he alleges that Winstead failed to competently perform the due diligence and other legal work necessary to ensure the 2017 Reg D Offering, the 2018 Reg A Offering, and the Opinion Letter were in compliance with applicable laws and regulations. He asserts claims for legal malpractice, negligent misrepresentation, and equitable indemnification.

Winstead answered and later moved to dismiss Moore's claims under the TCPA, asserting that Moore's claims were based on or in response to Winstead's exercise of the right to petition.

After a hearing, the trial judge signed an order denying Winstead's motion to dismiss because "the alleged failure to perform due diligence is not a protected communication under the TCPA." The order further stated, "As the Court has ruled on the applicability of the TCPA, it does not reach . . . the second step of the TCPA analysis." Winstead moved for reconsideration, and the trial court denied that motion after a second hearing.

Winstead perfected this interlocutory appeal. *See* CIV. PRAC. & REM. CODE § 51.014(a)(12).

## II. Applicable Law and Standard of Review

The TCPA authorizes a defendant in a civil case to move to dismiss an opponent's "legal action" under certain circumstances. *See id*. § 27.003(a). That motion triggers a three-step process. *See id*. § 27.005(b), (c), (d).

At step one, the movant must demonstrate that the legal action is based on or in response to the movant's exercise of a statutorily defined right or certain other statutorily defined conduct. *Id*. § 27.005(b). The plaintiff's petition is the best and all-sufficient evidence of the nature of the action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). "When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Id*. Step one requires a

claim-by-claim analysis. *See Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied) ("The definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis.").

If the movant carries its initial burden, the burden shifts to the claimant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. CODE § 27.005(c). If the claimant does not carry its burden, the trial court dismisses the claim. *See id.* § 27.005(b), (c). And even if the claimant carries its step-two burden, the trial court must dismiss the legal action at step three if the movant establishes an affirmative defense as a matter of law. *Id.* § 27.005(d).

We review a trial court's ruling on a TCPA motion de novo. *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *2 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.) (applying de novo standard to ruling on TCPA motion governed by the 2019 amendments).

## III. Analysis

### A. Issue One: Whether Winstead carried its step-one burden under the TCPA.

Winstead argues that the trial court erred by concluding that Winstead did not carry its step-one burden under the TCPA. Specifically, Winstead argues that Moore's claims are based on Winstead's exercise of its TCPA right to petition as that right is defined in § 27.001(4)(B) and (C). As discussed below, we agree with

–5–

the trial court as to Moore's negligent-misrepresentation claim, but not as to Moore's legal-malpractice and equitable-indemnification claims.

### 1.   Negligent-Misrepresentation Claim

On appeal, Winstead argues that all of Moore's claims are based on the three securities documents that Winstead prepared and that those documents were exercises of Winstead's right to petition because they were (i) communications "in connection with an issue under consideration or review by a . . . governmental body" and (ii) communications that were "reasonably likely to encourage consideration or review of an issue by a . . . governmental body."  CIV. PRAC. & REM. CODE § 27.001(4)(B), (C).  We conclude that Winstead's argument fails as to Moore's negligent-misrepresentation claim because that claim is not based on the three securities documents—it is based on alleged misrepresentations that Winstead made to Moore about the quality of its work on those documents.

In his negligent-misrepresentation claim, Moore alleges that Winstead misrepresented to him that Winstead "had met its legal standard of care in preparing" the three securities documents at issue in this case, namely the 2017 Reg D Offering, the 2018 Reg A Offering, and the Opinion Letter.  He adds that those representations "supplied false information" for his guidance in business transactions and that Winstead's negligent misrepresentations caused him damages.

In our view, Winstead's alleged statements to Moore that it "had met its legal standard of care in preparing" the securities documents are too remote from the

SEC's review of those documents to constitute "communication[s] in connection with an issue under consideration or review by a . . . governmental body." *See id.* § 27.001(4)(B). Although the alleged misrepresentations were about the quality of Winstead's work that went into the securities documents, we cannot say that they were made, in any meaningful sense, "in connection with" the issue under consideration by the SEC. Nothing in the record suggests that Winstead's representations to Moore were ever forwarded to the SEC, became part of the SEC proceedings, or were received by anyone except Moore. Winstead's legal standard of care was not under consideration or review by the SEC. Reading "in connection with" so broadly as to cover Winstead's comments to Moore about the quality of its work on the securities documents—and treating such comments as an "exercise of the right to petition"—would be adding to the types of communications subject to TCPA protection under § 27.001(4)(B). A court may not amend a statute by adding words that are not contained in the language of the statute as written. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

Nor does anything in the record show that Winstead's alleged misrepresentations to Moore about the quality of Winstead's legal work were reasonably likely to encourage SEC consideration or review of an issue. *See* CIV. PRAC. & REM. CODE § 27.001(4)(C).

We conclude that Winstead failed to demonstrate that Moore's negligent-misrepresentation claim is based on Winstead's exercise of its right to petition.

Accordingly, we overrule issue one with respect to Moore's negligent-misrepresentation claim.

### 2. Legal-Malpractice Claim

Next we consider Winstead's argument that Moore's legal-malpractice claim is based on the three securities documents that Winstead prepared and that those documents are communications "in connection with an issue under consideration or review by a . . . governmental body" or communications that were "reasonably likely to encourage consideration or review of an issue by a . . . governmental body." *Id*. § 27.001(4)(B), (C).

### a. "Communication"

The TCPA defines "communication" very broadly as including "the making or submitting of a statement or document in any form or medium." *Id*. § 27.001(1). Thus, under the TCPA, the three securities documents that Winstead prepared were "communications." *See id*. And they were Winstead's communications, because a lawyer's statements on behalf of a client are the lawyer's communications for TCPA purposes. *See Youngkin v. Hines*, 546 S.W.3d 675, 680–81 (Tex. 2018) (involving lawyer's dictation of settlement agreement into the record during trial); *Brenner v. Centurion Logistics LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *5–7 (Tex. App.—Dallas Dec. 14, 2020, no pet. h.) (mem. op.) (lawyer allegedly represented client's adversaries in litigation); *see also Winstead PC v. USA Lending Grp., Inc.*, No. 12-20-00172-CV, 2021 WL 1047208, at *3 (Tex. App.—Tyler Mar. 18, 2021,

–8–

no pet. h.) (mem. op.) (motion for default judgment); *Jetall Cos., Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at \*4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.) (settlement communications during pending lawsuit); *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 578–79 (Tex. App.—San Antonio 2019, no pet.) (answer filed in a lawsuit); *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied) (disclosures that lawyer made during court proceedings). *But cf. Snell v. Ellis*, No. 05-20-00642-CV, 2021 WL 1248276, at \*7 & nn.18–19 (Tex. App.—Dallas Apr. 5, 2021, no pet.) (mem. op.) (suggesting in dicta that a lawyer's communications on behalf of a client are not the lawyer's communications if the client sues the lawyer based on the communications).

We also conclude that those communications were exercises of the right to petition because they were made in connection with an issue under consideration or review by the SEC, a governmental body, or were reasonably likely to encourage such consideration. *See* CIV. PRAC. & REM. CODE § 27.001(4)(B), (C); *see also* 15 U.S.C.A. § 78d (establishing the Securities and Exchange Commission).

Moore argues that the communications were not exercises of the right to petition because there was no "issue" under consideration by the SEC. He cites *Black's Law Dictionary* for the proposition that an "issue" is "a point in dispute between two or more parties" and contends that the SEC was reviewing documents, not an "issue." But "issue" can also mean simply "something involving judgments

–9–

or decisions." *Issue*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1981). This broader meaning better fits the context of § 27.001(4)(B) and (C), which refer to an issue under consideration or review "by a legislative, executive, judicial, or other governmental body." Although judicial bodies may typically address points in dispute between parties, legislative and executive bodies can address "issues" of public concern that do not involve discrete points in dispute between parties. We conclude that the IWF securities documents submitted to the SEC presented an "issue" for the SEC's consideration within the meaning of § 27.001(4)(B) and (C).

Moore also asserts that the record raises a question whether Winstead actually transmitted all of the securities documents. But the securities documents (and Winstead's alleged negligence in preparing them) could not have caused the SEC Examination Letter and Moore's alleged damages unless the documents were transmitted. So we reject Moore's argument.

Finally, Moore argues that Winstead's January 2018 Opinion Letter indicates that IWF, not Winstead, issued the Reg A Offering.[1] But under the TCPA's definition, the Reg A Offering was a "communication" as soon as Winstead prepared it. *See* CIV. PRAC. & REM. CODE § 27.001(1). Even if Winstead itself did not submit the document to the SEC, Moore does not dispute that such a submission was

---

[1] Moore actually references the Reg D Offering in this argument, but this must be a mistake because the Opinion Letter refers to Regulation A, not D.

intended and that the document was reasonably likely to encourage SEC review. *See id.* § 27.001(4)(C).

b.  **"Based on"**

Next, we turn to Moore's live pleading to see whether his legal-malpractice claim is based on the three securities documents Winstead prepared. *See id.* § 27.005(b); *Hersh*, 526 S.W.3d at 467 (the petition is the best evidence of the nature of the plaintiff's action). We conclude that it is. Moore's legal-malpractice claim alleges the following:

> 34.  Defendant Winstead breached its duty of care to Plaintiff by failing to exercise due diligence and provide the appropriate standard of care *in preparing the 2017 Reg D Offering and the 2018 Reg A Offering Memoranda and the Opinion Letter*.

> 35.  Defendant's breach of its duty of care was a cause-in-fact of the August 28, 2018 SEC Examination Letter and [of] the subsequent filing of the Amended U-5 regarding Plaintiff by IWA on June 20, 2019 (the "Amended U-5").

> 36.  The August 28, 2018 SEC Examination Letter and the Amended U-5 were a cause-in-fact of Plaintiff's loss of employment at Commerce Street Capital.

> 37.  As a result of Defendant's breach of its duty of care to Plaintiff, Plaintiff has incurred lost wages, lost benefits, loss of reputation, loss of future earning capacity, and other actual and consequential damages.

(Emphasis added.)

Thus, Moore alleges that Winstead negligently prepared three securities documents submitted to the SEC, which caused the SEC to issue the Examination Letter, which in turn caused financial injury to him. This suffices to demonstrate

–11–

that Moore's legal-malpractice claim is based on the three securities documents and thus on Winstead's exercise of its right to petition.

Although Winstead's alleged negligence may also involve some failures to act or communicate, as the trial court's order says, paragraph 34 of Moore's petition plainly says that Winstead's actionable negligence included negligence in preparing the three securities documents. We cannot see how Moore could prove his legal-malpractice claim as pleaded without proving up Winstead's preparation of the documents that allegedly triggered the SEC Examination Letter and caused Moore's damages.

We sustain Winstead's first issue with respect to Moore's legal-malpractice claim.

### 3. Equitable-Indemnification Claim

This claim reads, in its entirety, as follows:

> 45. In the event that Plaintiff is sued in his role as an Officer and/or Director of IWH in relation to the 2017 Reg D Offering or the 2018 Reg A Offering, Plaintiff seeks equitable indemnification from Winstead for any losses he may incur from future lawsuits as a result of Winstead's breach of its duty to Plaintiff.

Moore does not allege that any such losses have occurred, so we construe this claim as seeking a declaratory judgment that Winstead is obliged to indemnify him if he incurs such losses in the future. A claim for declaratory relief is a "legal action" within the meaning of the TCPA. CIV. PRAC. & REM. CODE § 27.001(6).

Moore seeks this relief in the event he is ever sued "in his role as an Officer and/or Director of IWH *in relation to the 2017 Reg D Offering or the 2018 Reg A Offering*." (Emphasis added.) Thus, he seeks a declaration that Winstead must indemnify him if he is ever sued because of the two mentioned securities documents that Winstead prepared. Thus, the equitable-indemnification claim is based on two communications that we have already held constituted Winstead's exercise of the right to petition.

We sustain Winstead's first issue with respect to Moore's equitable-indemnification claim.

**B.      Issues Two and Three:  Steps two and three of the TCPA analysis.**

Winstead argues that we should address steps two and three of the TCPA analysis even though the trial court did not reach those steps.

In this case we conclude that it would be inappropriate to address steps two and three for the first time on appeal. The questions presented are not straightforward and should be addressed by the trial court first. *See Dorfman v. Proactive Inventory, Inc.*, No. 05-16-01286-CV, 2017 WL 2953058, at *2 (Tex. App.—Dallas July 11, 2017, no pet.) (mem. op.) (remanding because trial court erroneously denied TCPA motion without reaching the merits); *see also Reeves v. Harbor Am. Cent., Inc.*, No. 14-18-00594-CV, 2020 WL 2026527, at *8 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. denied) (remanding because trial court erroneously denied TCPA motion based on step one); *McManus v. Richey*, No.

10-16-00061-CV, 2016 WL 4703877, at *6 (Tex. App.—Waco Sept. 7, 2016, no pet.) (mem. op.) (same as *Reeves*).

Thus, we do not address Winstead's second and third issues, leaving them for the trial court to address on remand.

## IV.    Disposition

We affirm the trial court's Order Denying Winstead PC's Motion to Dismiss to the extent it concerns Moore's negligent-misrepresentation claim, and we reverse the order concerning Moore's legal-malpractice and equitable-indemnification claims.  We remand the case for further proceedings consistent with this opinion.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Schenck, J., dissenting
Molberg, J., dissenting from denial of request for en banc consideration, joined by JJ., Osborne, Partida-Kipness, Nowell
Schenck, J., concurring in denial of request for en banc consideration

200050F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WINSTEAD PC, Appellant

No. 05-20-00050-CV        V.

DEWEY M. MOORE, JR., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-15858. Opinion delivered by Justice Garcia. Justices Schenck and Smith participating.

In accordance with this Court's opinion of this date, the trial court's Order Denying Winstead PC's Motion to Dismiss is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's Order that denies Winstead PC's Motion to Dismiss as to appellee Dewey M. Moore, Jr.'s legal-malpractice claim and his equitable-indemnification claim. In all other respects, we **AFFIRM** the trial court's Order. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 20, 2021.