Opinion issued July 30, 2024



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00823-CV
_____

**DEPTMER M. ASHLEY, M.D., Appellant**

**V.**

**DAYLENE M. KENNY, DVM, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-02558**

---

## MEMORANDUM OPINION

Appellant Deptmer M. Ashley, M.D., appeals from the trial court's interlocutory order dismissing his claims against appellee Daylene M. Kenny, DVM, for defamation and business disparagement under the Texas Citizen's Participation

Act ("TCPA") and from the trial court's final judgment awarding Kenny attorney's fees, costs, and sanctions under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. In four issues, Ashley contends that the trial court erred by (1) granting Kenny's motion to dismiss under the TCPA; (2) sustaining Kenny's objections to Ashley's TCPA evidence; (3) overruling Ashley's objections to Kenny's TCPA evidence; and (4) awarding attorney's fees, costs, and sanctions to Kenny. We reverse and remand.

## Background

According to Ashley's second amended petition (the "live" petition), Ashley served in the United States Army and earned his medical degree in 2015. Ashley completed a residency at Tripler Army Medical Center ("Tripler") in Honolulu, Hawaii. After completing the residency, Ashley and his wife, who is also a medical doctor, entered a couples-match residency program through National Residential Matching Program ("NRMP"). The purpose of the program is to place medical students into residency training programs in hospitals around the country based on the preference of the applicant. If an applicant matches with a hospital, the hospital must accept the applicant. Through NRMP, Ashley applied for a fellowship with the University of Texas Health Science Center in Houston ("UT Health"). Ashley matched with UT Health, and he was accepted into its fellowship program beginning in July 2021.

In March 2021, before the fellowship began, UT Health notified Ashley that it had received an allegation of sexual misconduct against him, but UT Health did not provide additional details concerning the allegation at that time. Ashley executed an authorization form allowing UT Health to obtain personnel files from his previous employers, and he provided references to UT Health.

Despite Ashley providing this information, UT Health requested a waiver from NRMP to rescind the fellowship offer to Ashley. In its waiver request, UT Health disclosed that it had received an anonymous voicemail alleging that Ashley had been accused of sexual misconduct and that he had falsified his application by indicating that he was "chief resident" at Tripler. UT Health did not provide a copy of the voicemail recording with its waiver request.

Ashley responded to UT Health's waiver request by presenting evidence that the chief resident notation on his application was an "inadvertent misnomer" of which NRMP and UT Health had complete knowledge prior to Ashley's fellowship offer. NRMP denied UT Health's waiver request because NRMP had not received any information corroborating the sexual misconduct allegations, and Ashley had disclosed that he was a "resident class leader" rather than a "chief resident" prior to the offer.

In June 2021, UT Health requested reconsideration of its waiver request from NRMP. UT Health did not provide a copy of the voicemail recording, but UT Health attached the following transcript of the voicemail:

> Hi. I would like to leave an anonymous report about an incoming fellow named Martin Ashley Deptmer.[1] This report is to call attention that he has falsified his application. He was not a chief resident. I would also like to report that he has multiple allegations of sexual misconduct that I am warning to follow up on. This is something that I have to report anonymously. But in good conscious [sic] I can't go without saying something. I hope that this message helps your program to not be in the same position that other women have suffered.

NRMP denied UT Health's request for reconsideration because UT Health provided no additional information corroborating the allegations in the voicemail. Ashley began his fellowship with UT Health as scheduled, and the record indicates that he is still employed by UT Health.

In January 2022, before Ashley identified the anonymous caller, he filed an original petition in this case against John Doe. In February 2022, UT Health provided Ashley with a copy of the voicemail recording. Ashley identified the caller as Kenny. Ashley was friends and colleagues with Kenny's husband, Colin Kenny ("Colin"), when Ashley worked at Tripler. Soon after identifying Kenny as the caller on the voicemail recording, Ashley filed a first amended petition substituting Kenny as the named defendant. In April 2022, Colin filed a declaration stating that Ashley

---

[1] Ashley acknowledges on appeal that this is his preferred name.

4

had had sexual relationships with multiple nurses at Tripler and made a female staff member feel uncomfortable. Ashley filed a second amended petition in May 2022 naming Colin as a second defendant, but Ashley later nonsuited his claims against Colin.[2]

In the second amended petition, Ashley made the factual allegations discussed above. Ashley asserted claims for defamation and business disparagement against Kenny based on her voicemail statements that Ashley had allegedly falsified his application and had been accused of sexual misconduct.[3] Kenny filed an answer generally denying Ashley's allegations and asserting several affirmative defenses.

Kenny also filed a motion to dismiss Ashley's claims under the TCPA. In the motion, Kenny argued that the claims were based on or in response to her exercise of the right of free speech, which she argued "encompasses a physician's ability to provide medical care in a competent and safe manner." Kenny further argued that Ashley could not establish a prima facie case for his claims, and she could establish the affirmative defenses of truth and qualified privilege. She thus argued that Ashley's claims were barred under the TCPA, and she requested that the trial court dismiss Ashley's claims and award her attorney's fees, costs, and sanctions.

---

[2] Pursuant to Ashley's nonsuit, the trial court dismissed Ashley's claims against Colin without prejudice. Colin is not a party to this appeal.

[3] Ashley also asserted a claim against Kenny for intentional infliction of emotional distress, but he later withdrew this claim. This claim is not at issue in this appeal.

Kenny's motion relied solely on her and Colin's declarations. In his declaration, Colin stated that Ashley said he checked a box for "chief resident" on his NRMP application after receiving few invitations to interview the prior year, when Ashley did not check this box. After submitting an application indicating that he had been chief resident, Ashley received "materially more invitations to interview." Colin also declared that "Ashley had had sexual relationships with multiple nurses at Tripler." Colin also stated that Ashley "made a female staff member/attending physician uncomfortable and acted in an intimidating manner toward her." Colin was present when this occurred, and both he and Ashley were required to "attend remediation meetings" following this incident. Colin declared that he told Kenny this information.

In her declaration, Kenny recounted the same information contained in Colin's declaration, stating that she heard it from Colin. Kenny also stated that she heard from "friends who were staff and nurses at Tripler" that Ashley had had sexual relationships with nurses at Tripler and that "Ashley pursued nurses with low self-esteem because they were easy prey." She heard from another Tripler staff member that one of Ashley's sexual relationships had "caused problems in the workplace." Kenny stated that "[i]n [her] opinion, it is sexual misconduct for a doctor to pursue a sexual relationship with a nurse in the same workplace."

Kenny declared that she personally witnessed only two incidents of a sexual nature involving Ashley. When the two were at a social event with colleagues and their families, Ashley allegedly made a sexually explicit, profane comment in front of Kenny's child and others. Kenny also heard Ashley make demeaning comments about his wife. However, Kenny stated that "[she did] not consider these incidents to be sexual misconduct." Rather, she believed they showed "inappropriate" behavior consistent with what she had heard from others.

Ashley filed a combined response to Kenny's motion to dismiss and objections to Kenny's declaration. Ashley objected to the declaration on the ground that it contained inadmissible hearsay and was not "clear, positive, direct, credible, free from contradiction, and susceptible of being readily controverted." Specifically, Ashley objected to the parts of Kenny's declaration recounting statements she had heard from people other than Colin.

Ashley's response disputed that the TCPA applied to his claims. Although Ashley agreed with Kenny that the TCPA applies to statements about a healthcare professional's provision of medical services, Ashley argued that Kenny's statements in the voicemail did not implicate his duties as a doctor, and therefore the statements did not involve a matter of public concern. Ashley further argued that "UT Health was fully aware of his status [that he was not chief resident] by the time [Kenny's] Voicemail was received." Ashley supported this argument with his declaration

7

stating that the "chief resident" notation on his application was "an inadvertent misnomer" of which NRMP and UT Health were aware before Ashley was accepted into the fellowship program. Ashley also attached his curriculum vitae reflecting that he was resident class leader at Tripler. Ashley also argued that he could establish a prima facie case for his claims, and he relied on his affidavit, curriculum vitae, letters and declarations from his wife and several former colleagues, and evaluations of his work performance. Finally, Ashley argued that Kenny could not establish any affirmative defenses to his claims. Ashley requested that the court deny Kenny's TCPA motion.

Kenny filed a combined reply in support of her motion to dismiss and objections to Ashley's TCPA evidence. Kenny argued that Ashley had failed to cite any legal authority establishing that the TCPA did not apply to his claims. Kenny and Colin attached additional declarations disputing information contained in Ashley's TCPA evidence.

The trial court held a hearing on the motion to dismiss. The court subsequently entered a written order granting Kenny's TCPA motion. The order also overruled Ashley's objections to Kenny's evidence and sustained Kenny's objections to Ashley's evidence. Finally, the order awarded Kenny attorney's fees and costs under Civil Practice and Remedies Code section 27.009 in an amount to be determined in a future order.

8

Kenny filed a motion for attorney's fees and sanctions under the TCPA, and Ashley filed a response to the motion. The trial court signed a final judgment awarding Kenny $23,248.50 in attorney's fees, conditional appellate attorney's fees in the amount of $60,000, and $2,500 in sanctions. This appeal followed.

**TCPA**

In his first issue with multiple subparts, Ashley contends that the trial court erred by granting Kenny's TCPA motion to dismiss. Ashley primarily argues that the TCPA does not apply because his claims were not based on or in response to Kenny's exercise of her right of free speech under the TCPA. Alternatively, Ashley argues that he established a prima facie case for his claims, and Kenny did not establish a valid defense to these claims.

**A.      Standard of Review and Applicable Law**

The TCPA serves "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 913–14 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 27.002). "The statute provides this protection by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review." *Id.* at 914. Under the TCPA, a party may

9

seek dismissal of a legal action that is based on or in response to the party's exercise of certain rights, including the right of free speech, which is at issue in this case. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

Review of a TCPA motion to dismiss involves a multi-step analysis. *McLane Champions*, 671 S.W.3d at 914; *Walker v. Lunenberg*, 679 S.W.3d 883, 887 (Tex. App.—Houston [1st Dist.] 2023, no pet.). First, the movant must demonstrate by a preponderance of the evidence that the TCPA applies to the challenged legal action. TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.005(b); *McLane Champions*, 671 S.W.3d at 914; *Walker*, 679 S.W.3d at 887. If the movant satisfies this initial burden, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of his claim. *McLane Champions*, 671 S.W.3d at 914 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(c)). If the nonmovant establishes a prima facie case, the burden shifts back to the movant to establish an affirmative defense or other ground on which the movant is entitled to judgment as a matter of law. TEX. CIV. PRAC. & REM. CODE § 27.005(d).

We review de novo a trial court's ruling on a TCPA motion to dismiss. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023); *Walker*, 679 S.W.3d at 887. In conducting our review, we consider the pleadings, evidence a court would consider under Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC.

10

& REM. CODE § 27.006(a); *Walker*, 679 S.W.3d at 887. The basis of a legal action is determined by the plaintiff's allegations, not the defendant's admissions or denials. *Walker*, 679 S.W.3d at 887 (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). We view the pleadings in the light most favorable to the nonmovant. *Id.*

Whether the TCPA applies to a particular claim is an issue of statutory interpretation, which is a legal question that we review de novo. *USA Lending Grp.*, 669 S.W.3d at 200; *Walker*, 679 S.W.3d at 887. When interpreting statutory text, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *Walker*, 679 S.W.3d at 887 (quoting *ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 627 (Tex. App.—Houston [1st Dist.] 2022, pet. denied)).

**B. Analysis**

Ashley first argues that his claims concerning Kenny's voicemail statements to UT Health—i.e., that Ashley falsified his application because he was not "chief resident" and that he had been accused of sexual misconduct—are not based on or in response to Kenny's exercise of the right of free speech.[4] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(A). He argues that Kenny's statements do not implicate any criminal activity, they were made in a private voicemail rather than a public forum, and they did not implicate Ashley's duties or fitness as a doctor. Ashley

---

[4]     The parties do not dispute that the right of free speech is the only right at issue in this appeal.

11

therefore argues that Kenny's statements were not the subject of general interest, value, or concern to the public. We agree.

Kenny, as the TCPA movant, bore the initial burden to demonstrate by a preponderance of the evidence that Ashley's claims were based on or in response to her exercise of the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.005(b)(1)(A); *McLane Champions*, 671 S.W.3d at 914. The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern."[5] TEX. CIV. PRAC. & REM. CODE § 27.001(3). The parties dispute whether Kenny's voicemail statements were made in connection with a matter of public concern. *See id.*

"A matter of public concern" means "a statement or activity regarding": (A) public officials and persons; (B) "a matter of political, social, or other interest to the community;" or (C) "a subject of concern to the public." *Id.* § 27.001(7). It is well-established that "the provision of medical services by a health care professional constitutes a matter of public concern—it implicates issues of health and safety, community well-being, and services in the marketplace." *McLane Champions*, 671 S.W.3d at 915; *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591

---

[5] A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1). On appeal, Ashley does not dispute that Kenny's statements in her voicemail constituted a "communication" within the meaning of the TCPA.

12

S.W.3d 127, 136 (Tex. 2019); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015) (per curiam). It is likewise well-established that the "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecution" are matters of public concern. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); *Yu v. Koo*, 633 S.W.3d 712, 722 (Tex. App.—El Paso 2021, no pet.).

Here, the parties do not dispute that Kenny stated the following in the voicemail to UT Health:

> Hi. I would like to leave an anonymous report about an incoming fellow named [Ashley]. This report is to call attention that he has falsified his application. He was not a chief resident. I would also like to report that he has multiple allegations of sexual misconduct that I am warning to follow up on. This is something that I have to report anonymously. But in good conscious [sic] I can't go without saying something. I hope that this message helps your program to not be in the same position that other women have suffered.

In support of her TCPA motion to dismiss, Kenny relied solely on her and Colin's declarations to clarify the statements in her voicemail. Concerning the statement that Ashley falsified his application because he "was not a chief resident," the declarations stated that Ashley told Colin he checked a box for "chief resident" on his NRMP application in order to receive more invitations to interview with hospitals. However, Ashley's petition alleged that he was "resident class leader" and that the discrepancy was resolved before he was accepted into UT Health's fellowship program. Kenny presented no evidence disputing these allegations,

13

defining the positions of "chief resident" and "resident class leader," or showing that any material or meaningful distinction exists between these terms. Nor did Kenny produce any evidence showing that Ashley's misstatement on his application either affected his ability to provide medical services or constituted criminal activity. *See McLane Champions*, 671 S.W.3d at 915; *Brady*, 515 S.W.3d at 884. Thus, no evidence shows that the contents of Ashley's application were a concern to the public rather than a concern limited to Ashley, NRMP, and UT Health. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(3), (7), 27.005(b)(1)(A).

Concerning Kenny's statement that Ashley "has multiple allegations of sexual misconduct," Kenny's and Colin's declarations stated that Ashley told Colin he had sexual relationships with nurses with whom Ashley had worked. Kenny stated that in her opinion, it is sexual misconduct for a doctor to pursue a sexual relationship with a nurse. The declarations also stated that Ashley "made a female staff member/attending physician uncomfortable and acted in an intimidating manner toward her," and Colin and Ashley were required to "attend remediation meetings" after this incident. Kenny declared that she heard from others that "Ashley pursued nurses with low self-esteem because they were easy prey" and that one of Ashley's sexual relationships "caused problems in the workplace."[6] Kenny declared that she

---

[6]     Kenny also declared that she heard from "another resident" that "Ashley flashed his genitals" while "at a bar with work colleagues." In part of his third issue, Ashley argues that the trial court abused its discretion by overruling his objection to this

14

only personally observed Ashley make sexually explicit, profane, and demeaning comments at social events outside work on two occasions. But Kenny conceded that she did not believe these comments constituted sexual misconduct.

Kenny produced no evidence, however, showing how any of these allegations concerned Ashley's ability to provide medical services. *McLane Champions*, 671 S.W.3d at 915. There is no evidence that Ashley's alleged sexual relationships were nonconsensual or even occurred in the workplace. *See Brady*, 515 S.W.3d at 884. Although Kenny opined that it was sexual misconduct for a doctor to pursue a sexual

---

statement on the grounds that it constituted inadmissible hearsay, it was not based on Kenny's personal knowledge, and its probative value was outweighed by unfair prejudice. Kenny responds that she did not rely on this statement to prove the truth of the matter asserted; rather, she argues that she relied on the statement as proof that Ashley engaged in sexual misconduct as alleged in her voicemail to UT Health. We review a trial court's decision to exclude testimony for an abuse of discretion. *See Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 496 (Tex. 2022). In deciding a TCPA motion to dismiss, we may consider evidence a court could consider in summary judgment proceedings under Rule of Civil Procedure 166a. TEX. CIV. PRAC. & REM. CODE § 27.006(a). Under Rule 166a, declarations are admissible, but they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See* TEX. R. CIV. P. 166a(f); *see also* TEX. CIV. PRAC. & REM. CODE § 132.001(a) (providing that "unsworn declaration may be used in lieu of . . . affidavit" required by rule). We agree with Ashley that the statement Kenny heard from a third-party was not based on her personal knowledge. *See* TEX. R. CIV. P. 166a(f); TEX. R. EVID. 602. We also agree that this statement constitutes inadmissible hearsay. *See* TEX. R. EVID. 801(d), 802; *Rockman v. Ob Hospitalist Grp., Inc.*, No. 01-21-00383-CV, 2023 WL 3311548, at *6 (Tex. App.—Houston [1st Dist.] May 9, 2023, no pet.) (mem. op.) (concluding that court should not consider inadmissible hearsay evidence over party's objection in ruling on TCPA motion to dismiss). We therefore conclude that the trial court abused its discretion by overruling Ashley's objection to this statement. We sustain in part Ashley's third issue in part.

15

relationship with a nurse, there is no evidence that these alleged relationships violated hospital policy or constituted criminal conduct. The only mention of the workplace is that Kenny heard one of Ashley's relationships "caused problems in the workplace" and Ashley made a female colleague "uncomfortable and acted in an intimidating manner toward her," but this evidence is too vague to implicate the public's concern. *See Terrell v. Mazaheri*, 676 S.W.3d 116, 126 (Tex. App.—San Antonio 2023, no pet.) (concluding that TCPA did not apply to "vague" statement unrelated to any specific unethical conduct by attorney). The other alleged incident in which Ashley made sexually explicit and demeaning comments took place outside the workplace. But Kenny did not produce any evidence or point to any legal authority establishing that this conduct concerned Ashley's provision of medical services or involvement in criminal activity.[7] *See McLane Champions*, 671 S.W.3d

---

[7] In the cases holding that the TCPA applies to communications concerning sexual misconduct, the sexual misconduct at issue constituted criminal activity. *See, e.g.*, *Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 WL 370589, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (mem. op.) ("[A]ppellate courts have held similar statements to have been made in connection with matters of public concern, given that both sexual assault and making a false police report are crimes."); *Morris v. Daniel*, 615 S.W.3d 571, 579 (Tex. App.— Houston [1st Dist.] 2020, no pet.) ("[A]ssuming that allegations of sexual abuse of a pupil by an elementary school teacher qualify as a matter of public concern, they do so because allegations of child sex abuse implicate the welfare and safety of all other pupils over whom the teacher has authority or with whom the teacher potentially has contact."); *Crews v. Galvan*, No. 13-19-00110-CV, 2019 WL 5076516, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 10, 2019, no pet.) (mem. op.) ("Clearly, sexual misconduct involving young vulnerable individuals" by pastor "are matters of public concern as they relate to health, safety, and community well-being"); *contra Terrell v. Mazaheri*, 676 S.W.3d 116, 125–26 (Tex. App.—

at 915; *Brady*, 515 S.W.3d at 884. In sum, no evidence ties Ashley's alleged conduct to a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(3), (7), 27.005(b)(1)(A).

On appeal, Kenny primarily relies on *Lippincott v. Whisenhunt* to argue that the TCPA applies to allegations concerning "misrepresenting qualifications and allegations of misconduct." This argument is based on a misreading of *Lippincott*.

In *Lippincott*, hospital administrators received reports alleging that a nurse had "represented himself to be a doctor, endangered patients for his own financial gain, and sexually harassed employees." 462 S.W.3d at 508–09. The administrators then sent emails to four people, and the emails included separate allegations that the nurse "failed to provide adequate coverage for pediatric cases," "administered a different narcotic than was ordered prior to pre-op or patient consent being completed," "falsified a scrub tech record on multiple occasions," and "violated the company's sterile protocol policy." *Id.* at 509–10 (internal quotations omitted). The nurse sued the administrators for defamation and other claims based on their own statements, and the administrators filed a motion to dismiss under the TCPA. *Id.* at 509.

---

San Antonio 2023, no pet.) (holding that statement by lawyer's wife that client "fool[ed] around with my husband" did not involve specific unethical conduct by attorney and thus did not involve matter of public concern).

17

Contrary to Kenny's argument on appeal, the Texas Supreme Court did not consider whether the TCPA applied to the reports received by the hospital administrators that the nurse had "represented himself to be a doctor" and "sexually harassed employees." *Id.* at 508–09. Rather, the court considered whether the TCPA applied to the administrators' statements that the nurse failed to adequately cover cases, failed to provide the correct narcotics, falsified medical records, and violated hospital policy. *Id.* at 509–10. The court recognized that "the provision of medical services by a health care professional constitutes a matter of public concern," and it thus concluded that the TCPA applied to the administrators' statements. *Id.* at 510. Kenny did not produce any evidence showing that her statements were analogous to the administrators' statements. *Lippincott* therefore does not support Kenny's argument that her statements were made in connection with a matter of public concern.[8]

---

[8] The remaining cases cited by Kenny likewise stand only for the well-established proposition that the TCPA applies to statements about a healthcare professional's provision of medical services, but these cases do not involve allegations that a doctor falsified his employment application or had been accused of sexual misconduct. *See Khalil v. Mem'l Hermann Health Sys.*, No. H-17-1954, 2017 WL 5068157, at *5 (S.D. Tex. Oct. 30, 2017) ("Dr. Khalil's allegations are about physicians and healthcare administrators and their evaluations, discussions, and reports about her performance as a physician. The communications at issue are related to health and safety, matters of public concern. Memorial Hermann has met its burden to invoke the Act."); *Mem'l Hermann Health Sys. v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at *6 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, pet. denied) (mem. op. on reh'g) (concluding that communications regarding Khalil's competence—including various peer-review and credentialing committee findings that Khalil failed to read patient records, communicate with surgeons,

We conclude that Kenny did not meet her burden to establish by a preponderance of the evidence that the TCPA applies to the challenged legal actions. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.005(b); *McLane Champions*, 671 S.W.3d at 914. We therefore hold that the trial court erred by granting Kenny's motion to dismiss under the TCPA.[9] We sustain Ashley's first issue.

## Attorney's Fees

In his fourth issue, Ashley contends that because the trial court erred by granting Kenny's TCPA motion to dismiss, the court abused its discretion by awarding attorney's fees, costs, and sanctions to Kenny.

We review a trial court's award of attorney's fees, costs, and sanctions under the TCPA for an abuse of discretion. *ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 440, 443 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). If a court orders dismissal of a legal action under the TCPA, the court "shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action," and the court also "may award" sanctions. TEX. CIV. PRAC. & REM.

---

demonstrate insight or basic knowledge, recognize serious symptoms, and acknowledge incorrect dosing—were matters of public concern); *see also San Angelo Cmty. Med. Ctr., LLC v. Leon*, No. 03-19-00229-CV, 2021 WL 1680194, at *7 (Tex. App.—Austin Apr. 29, 2021, pet. denied) (mem. op.); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 709 (Tex. App.—Amarillo 2018, pet. denied).

[9] Because we hold that the trial court erred by granting Kenny's motion to dismiss because the TCPA does not apply to Ashley's claims against her, we need not consider Ashley's second issue or the remainder of his third issue. *See* TEX. R. APP. P. 47.1.

19

CODE § 27.009(a). In her TCPA motion to dismiss, Kenny requested awards of attorney's fees, costs, and sanctions under the TCPA, and the trial court granted the motion. *See id.* Because we have already determined that Kenny did not establish her entitlement to dismissal of Ashley's claims under the TCPA, we also conclude that Kenny was not entitled to attorney's fees, costs, and sanctions based on the dismissal of a legal action under the TCPA. *See id.*; *Darnell v. Rogers*, 588 S.W.3d 295, 306 (Tex. App.—El Paso 2019, no pet.). We hold that the trial court abused its discretion by awarding attorney's fees, costs, and sanctions to Kenny. We sustain Ashley's fourth issue.

### Conclusion

We reverse the trial court's interlocutory order granting Kenny's motion to dismiss under the TCPA and the trial court's final judgment awarding Kenny attorney's fees, costs, and sanctions, and we remand the case to the trial court for further proceedings consistent with this opinion.

April L. Farris
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.